THOMAS, Justice.
There can be no doubt that Johnnie Benjamin Smith was murdered in a street of the city of Miama Beach 1 February 1951.
The appellant was charged with the death of Johnnie Benjamin Smith and indicted for murder in the first degree. The jury returned a verdict of guilty of murder in the second degree and the appellant was sentenced to imprisonment for life. The appellant appealed from that judgment and secured a reversal for a new trial. Coco v. State, Fla., 62 So.2d 892. Terrell, Thomas and Sebring, JJ., dissenting.
An informátiün was then filed' in the Criminal Court of Record charging appellant with murder in the' second degree. He was found guilty, as charged, by a jury and sentenced to life imprisonment.
From that judgment he now appeals.
Because of the complex nature of the sole question presented to us for consideration and determination, we quote it in full:
“In a homicide prosecution, where the record utterly fails to disclose a motive on the part of accused, and where the accused and his wife positively testify that accused was not the perpetrator of said homicide, or even present at the time, and where, upon the record, the sole question presented to the jury is the identity of the accused, and where the two purported eyewitnesses who purport to identify the accused admit that they previously committed perjury on the very question of accused’s identity, in the same case and where both of said identifying witnesses are thoroughly impeached, and where their testimony bears the earmarks of falsity, and in many aspects is vague, uncertain and contradictory, is it not error for the trial court to allow, over the accused’s objection, the introduction into evidence of a ■gun and evidence of fingerprints by the fingerprint expert, about prints purportedly lifted from said gun when no showing is made that (1) said gun was found on the accused or in the vicinity of the place where the crime was committed and (2) where no showing is made that said gún was the actual homicide weapon, or even that it could have been, when said gun and fingerprint testimony has the natural effect of (1) furnishing purported substantive evidence of the accused’s identity or, (2) of corroborating the said discredited eye-witnesses’ identification of accused?”
*348 Before analyzing the question and judging its elements by the evidence in the case, we draw attention to a concession and a statement in appellant’s brief which materially simplifies our task. He concedes that “The record is entirely, free of any conflict or dispute as to the facts on every material element of the crime of murder in the second degree, except the identity of the accused.” He states that' both of .the “witnesses for the State, while positively identifying this appellant as the man who fired the shots which killed the decedent,'” admitted that they had previously committed perjury in testifying:to, this issue-at the former trial and the preliminary hearing; that their testimony was contradictory within itself; that it was refuted, in part, by other State witnesses; and that “in some aspects” it was vague, uncertain, and bore the; earmarks, of .falsity.
Bearing in mind these representations, we advert to the question to extract the pivotal point on which the 'decision must hinge. We gather that it is appellant’s position'that as the testimony of the two witnesses as to identity was so inconclusive, the court'erred when it permitted the State to introduce the gun in evidence and allowed' testimony about fingerprints found, o'p' thé gun .which had the effect of identifying the accused or corroborating the witnesses on the.matter of identity.
Best way to answer the question is to turn to the record and see just what' the witnesses said about the identity' of 'the accused and the circumstances surrounding the gun and the prints.
Before doing that we dismiss the first two assertions in the question with the observations that no motive need have been proved to justify a verdict and that the denial by the accused and his wife that the latter did not commit the crime were simply statements that the jury was justified in believing or disbelieving. The want of motive and the assertion of appellant’s innocence help us little in deciding the immediate point of law.
According to the first eye-witness, Williams, hé and Johnnie Smith we're cleaning cars in the street in the early morning when the appellant and a lady drove up in a Cadillac. The appellant spoke to Smith and entered an apartment building. A few minutes later the appellant returned to his car and sat in the front seat with his feet outside. The witness continued with his work, then he heard a pistol shot and looked up and saw Johnnie Smith going around one of the cars. After the first shot he saw Johnnie running and saw appellant shoot Johnnie Smith twice. Johnnie Smith fell, then the appellant .looked all around and ‘.‘walked * * *. right, over to Johnnie Benjamin [Smith] and . shot him twice more,” as he stood over him.
The witnesses, who were cleaning cars in the vicinity when the shooting^-occurred, .were positive on the direct and. cross-examinations, in their identification of the appellant as the one who fired the fatal shots. These witnesses freely admitted that there were inconsistencies between the testimony they were now giying-and.the . testimony they had given on previous occasions when they were vague about the identity of the person who was firing.
The witnesses stated without hesitancy, so far as the record shows, that they had not formerly told all the truth for the simple reason that they were frightened. . Several .times they made -this admission, and .as counsel for the appellant undertook to impeach them by references to records of their testimony at the preliminary hearing and the former trial establishing the fact that they had withheld positive identification they freely acknowledged the conflicts and re-asserted that they were scared.
We are fully conscious of the potency of the argument that the inconsistency between a weak statement of identity at one trial and hearing and a strong identity at a later trial would indicate that the witnesses’ testimony was unreliable, but it seems to us that the question of which version to accept was one for the jury, inasmuch as they pass upon the weight of *349 the testimony and the credibility of the witnesses, and not one for the trial court or this Court to judge as a matter of law.
We do not thnk that the discrepancies in the tales of the identifying witnesses brings into play the rule announced, on rehearing in Callaway v. State, 112 Fla. 599, 152 So. 429, 432, that “where evidence supporting a conviction for felony bears such earmarks of falsehood and uncertainty as to amount to a legal insufficiency of the evidence, to support the verdict, a new trial will be awarded by the appellate court in order that another jury may have. an opportunity to pass on the- evidence.”'
After the police arrived at the scene of the crime1 they arrested-the appellant and took him to headquarters where his fingerprints were taken. ■
In a garbage can of the apartment adjoining' appellant’s about eight feet away, an officer saw a paper bag and upon lifting the bag, discovered a gun.’ ' He did not touch the weapon' but called a police detective and they took the can tó á squad car. The detective-then carried it to the police station and delivered it to the,- supervisor of the identification bureau who ' photographed the gun as it lay in the can. He then took the weapon out.of the can by-inserting a pencil in the trigger guard, laid it on a table and dusted it' for latent fingerprints. He “lifted” the prints and sent then? to the Federal Bureau of Investigation in Washington. Although the police officer who first examined the prints reported that they were not appellánt’s, the prints were eventually identified as his by a fingerprint expert of the Federal Bureau of Investigation.
After carefully reviewing the evidence and digesting the question posed by the appellant, we understand that the principal error claimed to have been committed was the introduction of the revolver as evidence of identity of the accused, when no showing had been made that it was the weapon from which the fatal shots had been fired or that it was found in the possession of the accused or in the vicinity where the crime was committed. In order to reach' such a conclusion it is necessary to discard the testimony of the-witnesses who, at the last trial, positively identified the appellant as the person who shot Johnnie Benjamin Smith.both.when he was standing, or walking, and when he was prone in the street.
Once this testimony were eliminated, the remainder would fall in the classification of circumstantial evidence, the want of motive would become important, Bonner v. State, 67 Fla. 492, 65 So. 663, the continuity of the evidence of the State would be broken, and the familiar rule with reference to the quality of circumstantial, evidence justifying conviction would be violated.
If no-one-saw the appellant fire the gun, certainly the failure to show that the bullets removed from the victim’s body were fired ■from the gun -found in the trash can would he such a break in the chain-of evidence' as to- fender the gun and testimony about it inadmissible.
•It' could not b’e- argued with any logit at all that if a man is found dead from gunshot w,ounds';-a pistol. found-in -another’s possession ey-en, would be. evidence that, the gun ■was.the murder weapon'and-fingerprints on it were made by. the murderer. -«
Our trouble in following-the appellant’s -reasoning "and adapting his conclusion comes from our inability to accept his premise.
' It is quite true that, the witnesses who positively identified - the appellant in their testimony at the last .trial were so vague in their statements at the first trial that this Court, with three members dissenting, reversed the judgment.
On the last trial the witnesses admitted the discrepancies apparently without reluctance. They gave the same reason, that they were frightened. Other testimony supports the statements that they were afraid. A police officer-told how one witness ran away from him and had to be captured; how the witness was finally subdued only when the officer sat upon him. The same witness tried to escape from the police station when appellant appeared there, and was restrained by an officer.
*350 But the question is whether or not this Court can as a matter of law disregard the second stories, much as they contradict the first ones, and when that is done,. hold that the admission, of the gun was so improper as to constitute prejudicial error requiring a reversal".
We do not understand that such is' our province.
It is elementary in our jurisprudence that the credibility of the witnesses and weight to be given their testimony are questions for the jury to determine. The conflicts between their testimony at the last trial and their testimony at the first trial and the preliminary hearing were an appropriate subject for debate and knowing as we do the talent and experience of appellant’s attorney, we have -no doubt that the matter was thoroughly presented on appellant’s behalf.
The jury chose to believe the witnesses and, presumably, to accept the excuse given.
When the' case was here before, the judgment was reversed for a new trial, largely because of the unsatisfactory nature of the identification.' At this new trial this evidence became unquestionably stronger. If the jury believed it, as the jury had the right to do, the gun was properly introduced and the whole evidence justified the vérdict.
In conclusion, we repeat that in an earnest effort to pass upon the correctness of the judgment with appellant’s question ever before us, we are of the opinion that once the credibility of the testimony of the two witnesses is decided to have been a matter for the jury, the othér elements become impotent and the challenge fails.
Affirmed.
MATHEWS, C. J.,.and TERRELL, SE-BRING, ROBERTS, and DREW, JJ., concur.
HOBSON, J., concurs specially in affirmance.