413 So.2d 741 (1982)
James Ernest HITCHCOCK, Appellant,
v.
STATE of Florida, Appellee.
No. 51108.
Supreme Court of Florida.
February 25, 1982.
Rehearing Denied May 27, 1982.
*743 Richard L. Jorandby, Public Defender, Craig S. Barnard, Chief Asst. Public Defender and Richard B. Greene, Asst. Public Defender, West Palm Beach, for appellant.
Jim Smith, Atty. Gen. and Robert L. Bogen, Asst. Atty. Gen., West Palm Beach, for appellee.
PER CURIAM.
James Ernest Hitchcock appeals his conviction of murder in the first degree and sentence of death. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
A jury convicted Hitchcock of first-degree murder for the death of his brother's thirteen-year-old stepdaughter under an indictment charging one count of premeditated murder. After weighing the aggravating and mitigating factors, the trial court agreed with the jury's recommendation and imposed the death sentence. We affirm both the conviction and sentence.
Unemployed, ill, and with no place to live, Hitchcock moved in with his brother Richard and Richard's family two to three weeks before the murder. On the evening of the murder, appellant watched television with Richard and his family until around 11:00 p.m. He then left the house and went into Winter Garden where he spent several hours drinking beer and smoking marijuana with friends.
According to a statement Hitchcock made after his arrest, he returned around 2:30 a.m. and entered the house through a dining room window. He went into the victim's bedroom and had sexual intercourse with her. Afterwards, she said that she was hurt and was going to tell her mother. When she started to yell because he would not let her leave the bedroom, Hitchcock choked her and carried her outside. The girl still refused to be quiet so appellant choked and beat her until she was quiet and pushed her body into some bushes. He then returned to the house, showered, and went to bed.
At trial Hitchcock repudiated his prior statement. He testified that the victim let him into the house and consented to having intercourse. Following this activity, his brother Richard entered the bedroom, dragged the girl outside, and began choking her. She was dead by the time appellant got Richard away from her. When Richard told him that he hadn't meant to kill her, Hitchcock told him to go back inside and that he, the appellant, would cover up for his brother. According to Hitchcock, he gave his prior statement only because he was trying to protect Richard.
On appeal, Hitchcock raises numerous points which will be addressed in order of presentation to this Court.
*744 I. In his first point, Hitchcock claims that the trial court improperly restricted his presentation of evidence corroborating his defense theory, his impeachment of a key prosecution witness, and his explanation of his false "confession." An examination of the record does not reveal that the trial judge committed error as Hitchcock alleges.
Defense counsel called the defendant and a series of Hitchcock's relatives  a brother and his wife, several sisters, and Hitchcock's mother  to the stand, asking each essentially the same questions, specifically, details of the defendant's conduct around children, the early lives of the two brothers, and whether Richard Hitchcock had ever exhibited violent tendencies. The state objected successfully to most of such questions on the grounds of immateriality and irrelevance.[1]
The person seeking admission of testimony must demonstrate why soughtafter testimony is relevant. See Haager v. State, 83 Fla. 41, 90 So. 812 (1922). Hitchcock has presented nothing to show that he made a clear offer of proof which would overcome the state's objections. We find the excluded testimony regarding Hitchcock's conduct around children and his relationship with Richard so remote and so slightly probative of any relevant issue that the trial judge, in his discretion, could properly exclude the testimony.
The testimony of family members who would be called to establish that Richard Hitchcock had a violent nature and a reputation for violence was also properly excluded. The trial court found the proffered testimony irrelevant and refused to admit it. Appellant claims this evidence would impeach Richard and would tend to prove his substantive defense that Richard, not the appellant, committed the murder.
A defendant has the right to present witnesses in his own defense but must comply with established rules of procedure and evidence designed to assure both fairness and reliability. See Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). Evidence of particular acts of misconduct cannot be introduced to impeach the credibility of a witness. Fulton v. State, 335 So.2d 280 (Fla. 1976). For impeachment purposes the only proper inquiry into a witness' character goes to reputation for truth and veracity. Pandula v. Fonseca, 145 Fla. 395, 199 So. 358 (1940). The excluded testimony could have been relevant only to show Richard Hitchcock's alleged bad acts and violent propensities and, thus, was properly excluded for impeachment purposes. Nor is there merit to appellant's claim that the testimony concerning Richard's character would tend to prove that Richard committed the murder. The testimony offered in the instant case was too remote to be relevant.
II. Hitchcock's next point concerns the trial court's communication with the jury during its deliberations. As a general rule, it is error for a judge to respond to a jury's question without the parties being present and having the opportunity to discuss the request. Ivory v. State, 351 So.2d 26 (Fla. 1977).
In the instant case, the jury sent the following note to the judge: "Is it required for us to recommend death penalty or life at this time?" Because the jury was then deliberating on guilt or innocence, the judge wrote back: "You should not consider any penalty at this time  only guilt or innocence." These notes are marked as being filed in open court, but the record is silent as to whether or not the parties were present during this exchange. This communication does not fall within the scope of Florida Rule of Criminal Procedure 3.410, and Hitchcock has failed to demonstrate anything more than harmless error regarding this point.
*745 III. Hitchcock also contends that the exemption, on request, of mothers with young children from jury service denied his right to a jury drawn from a fair cross-section of the community.[2] In McArthur v. State, 351 So.2d 972 (Fla. 1977), this Court held that mothers with young children do not comprise a constitutionally significant class.[3] Excluding such women, therefore, does not infringe upon a defendant's right to a jury composed of a fair cross-section of the community.
Hitchcock cites Duren v. Missouri, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979), to support his contention. Duren held unconstitutional a Missouri statute which, upon request, exempted all women from jury service. Section 40.01, Florida Statutes (1975), on the other hand, provides only a limited exemption, and we find nothing in Duren which makes it necessary to recede from the Court's previous rulings on this issue.
IV. As his fourth point on appeal, Hitchcock challenges the sufficiency of the evidence to convict him of first-degree murder. He alleges that the evidence presented was insufficient to show either premeditation or felony murder.
A judgment of conviction comes to this Court with a presumption of correctness, and a claim of insufficiency of the evidence cannot prevail if substantial competent evidence supports the verdict. Spinkellink v. State, 313 So.2d 666 (Fla. 1975), cert. denied, 428 U.S. 911, 96 S.Ct. 3227, 49 L.Ed.2d 1221 (1976). Furthermore, when it is shown that the jurors have performed their duty faithfully and honestly and have reached a reasonable conclusion, more than a difference of opinion as to what the evidence shows is required for this Court to reverse them. Alvord v. State, 322 So.2d 533 (Fla. 1975), cert. denied, 428 U.S. 923, 96 S.Ct. 3234, 49 L.Ed.2d 1226 (1976). At trial, Hitchcock testified that the girl consented to intercourse, that his brother Richard discovered them, and that Richard strangled the girl. The jury, however, also heard Hitchcock's prior statement that he choked the girl while still in her bedroom and then carried her outside where he again choked and beat her until she was quiet and finally hid her body in some bushes.
It is well settled that the credibility of witnesses and the weight to be given testimony is for the jury to decide. Coco v. State, 80 So.2d 346 (Fla.), cert. denied, 349 U.S. 931, 75 S.Ct. 774, 99 L.Ed. 1261, cert. denied, 350 U.S. 828, 76 S.Ct. 57, 100 L.Ed. 739 (1955). Choking the girl, taking her outside, and then choking her again  all to make her be quiet  is substantial evidence to have supported a finding of premeditation. In addition, the total circumstances, including the time of night, entry through a window, the victim's tender years, and medical testimony that the child was of previously chaste character, refuted Hitchcock's claim of consent and could be a basis to find that the sexual battery was committed on the victim by force and against her will, thus warranting the instruction on felony murder. Under these circumstances, the jury could easily have considered Hitchcock's contention that the girl consented to have been unreasonable. See Conner v. State, 106 So.2d 416 (Fla. 1958).
We hold, therefore, that the evidence was sufficient to allow the state to take the case to the jury on theories of both premeditation and felony murder.
V. At the close of the state's evidence, Hitchcock moved for a judgment of acquittal, claiming insufficiency of the evidence to show either premeditation or felony murder. The trial court denied the motion as to premeditation but reserved ruling on the felony aspect until the defense concluded its presentation.[4] Defense counsel renewed the motion for acquittal, which the judge denied, at the close of testimony.
*746 Hitchcock now claims that reserving ruling on the felony evidence prejudiced him by forcing him to proceed with his defense without knowing whether the question of felony murder would go to the jury. To support his claim that the partial reservation was error, Hitchcock cites Adams v. State, 102 So.2d 47 (Fla. 1st DCA 1958), and State v. Rolle, 202 So.2d 867 (Fla. 2d DCA 1967). Both Adams and Rolle declared such reservation to be error. We agree and hold that trial courts should not reserve ruling on motions for judgment of acquittal presented at the close of the state's case. Under the circumstances of this case, however, the error was harmless.
Since the motion was not granted, however, it could and should have been considered denied. Because a factual basis supported the felony-murder theory, the partial reservation was harmless and did not prejudice the defendant. Hitchcock testified that the victim consented to having intercourse. This testimony constituted the defense's only evidence to rebut felony murder[5] and shows that the defense, as it should have, treated the partial reservation as a denial. Since the victim of the sexual battery was dead, it does not appear that the defense could or would have proceeded in a different manner regarding the felony-murder theory even if the court had not reserved ruling on the motion for acquittal.
VI. Hitchcock also claims that the trial court offered him a sentence of life imprisonment in return for a plea of nolo contendere as charged. He concludes that the court imposed the death penalty because he exercised his right to a jury trial.
Hitchcock's version of the facts surrounding this point, however, is not supported. Rather, it appears from the record, as supplemented, that the judge agreed only to consider such an agreement if Hitchcock were to plead guilty. Because Hitchcock refused to consider a plea, the court never had to consider whether to accept the plea bargain. When defense counsel reminded the judge during sentencing proceedings of the plea negotiations, the judge responded, "there was never any understanding because your client didn't want to consider any plea." There is nothing in the record even hinting that the trial court imposed the death penalty because Hitchcock chose to have a jury trial. Instead, as shown in the court's findings of fact, the evidence supports the propriety of the death sentence in this case.
VII. Hitchcock also argues that his conviction and sentence must be overturned because, prior to trial, he had no notice of the aggravating circumstances that the state intended to show and on which the judge and jury relied. This contention is without merit. Menendez v. State, 368 So.2d 1278 (Fla. 1979). See Clark v. State, 379 So.2d 97 (Fla. 1979); Spinkellink v. Wainwright, 578 F.2d 582 (5th Cir.1978), cert. denied, 440 U.S. 976, 99 S.Ct. 1548, 59 L.Ed.2d 796 (1979).
Section 921.141(5), Florida Statutes (1975), sets out the aggravating factors to be considered in determining the propriety of the death sentence. The statutory language limits aggravating factors to those listed. Provence v. State, 337 So.2d 783 (Fla. 1976), cert. denied, 431 U.S. 969, 97 S.Ct. 2929, 53 L.Ed.2d 1065 (1977). Thus, there is no reason to require the state to notify defendants of the aggravating factors that the state intends to prove.
VIII. In his final point on appeal, Hitchcock alleges numerous infirmities in his sentencing. First, he claims the trial judge improperly assessed the aggravating and mitigating factors. The court found three aggravating circumstances: the murder was committed in the course of an involuntary sexual battery; the purpose of the murder was to eliminate a witness in order to avoid arrest; and the murder was especially heinous, wicked, or cruel.
*747 After reviewing the record, we find the consideration of these aggravating factors amply supported. Regarding the felony-murder aggravating circumstance, the judge stated that the record did not substantiate Hitchcock's assertion that the girl consented to the admitted sexual intercourse. As determined earlier in this opinion, the totality of the evidence supported the felony-murder instruction, and this first circumstance was properly considered. In his post-arrest statement Hitchcock said that he choked and beat the child to make her be quiet and to keep her from telling her mother. In view of proof this strong, murder to eliminate a witness is properly considered in aggravation. See Riley v. State, 366 So.2d 19 (Fla. 1978). The trial judge did not elaborate on his finding that the murder was especially heinous, wicked, or cruel, but that finding is supported by the facts of this case.[6]
The judge found only one mitigating factor, Hitchcock's age (20 years). Hitchcock now contends that the court erroneously failed to find that he suffered from extreme mental and emotional disturbance, that he was under extreme duress or the domination of another person, and that his capacity to appreciate the criminality of his conduct was substantially impaired. This claim, however, is not supported by the evidence. During the sentencing phase, defense presented only one witness, one of Hitchcock's brothers. In an attempt to mitigate the possible sentence, this brother testified that, as a child, Hitchcock had once "sucked on gas" and that afterwards his mind seemed to wander occasionally. During the guilt phase, Hitchcock testified that he had been drinking heavily and smoking marijuana prior to committing the crime. Apparently neither the jury nor the judge found this testimony sufficiently compelling to cause mitigation of the sentence. We do not find differently. Compare Hargrave v. State, 366 So.2d 1 (Fla. 1978), cert. denied, 444 U.S. 919, 100 S.Ct. 239, 62 L.Ed.2d 176 (1979), and LeDuc v. State, 365 So.2d 149 (Fla. 1978), cert. denied, 444 U.S. 88, 100 S.Ct. 175, 62 L.Ed.2d 714 (1979), with Burch v. State, 343 So.2d 831 (Fla. 1977), and Jones v. State, 332 So.2d 615 (Fla. 1976).
In his second sentencing challenge, Hitchcock claims that the rape portion of section 921.141(5)(d) is so vague and confusing as to be unconstitutional because the crime of "rape" no longer exists in this state.[7] The trial judge substituted the words "sexual battery" for rape in his charge to the jury in listing the aggravating factors. In his charge to the jury during the initial phase of the trial, the trial judge defined involuntary sexual battery. The former definition of rape, "ravishes or carnally knows a person of the age of eleven years or more by force and against his or her will," section 794.01(2), Florida Statutes (1973), was substantially included therein. The defendant's conduct in this case conformed to this definition. See Adams v. State, 412 So.2d 85 (Fla. 1982). A statute is void for vagueness if it fails to give a person of ordinary intelligence fair notice that contemplated conduct is forbidden. Papachristou v. City of Jacksonville, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972). On the other hand, a statute is not void if its language "conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." United States v. Petrillo, 332 U.S. 1, 8, 67 S.Ct. 1538, 1542, 91 L.Ed. 1877 *748 (1947). Accordingly, we find no merit to appellant's contention on this point.
Hitchcock next claims that section 921.141 unconstitutionally limits the consideration of mitigating factors and that he was improperly limited in presenting mitigating evidence. Again, we find no merit to these contentions. As stated in Songer v. State, 365 So.2d 696 (Fla. 1978), cert. denied, 441 U.S. 956, 99 S.Ct. 2185, 60 L.Ed.2d 1060 (1979), "all relevant circumstances may be considered in mitigation, and ... the factors listed in the statute merely indicate the principal factors to be considered." 365 So.2d at 700. After the jury returned its verdict, defense counsel asked for time to prepare for sentencing and was given a week for that purpose. At sentencing, however, defense presented only one witness. There is nothing in the record indicating that the trial judge limited the defense's presentation. Rather, it appears that the defense itself chose to limit that presentation.
Hitchcock's final claims  that section 921.141 is unconstitutional on its face, that the death penalty is inconsistently applied, and that there are no standards for weighing aggravating and mitigating factors  have been discussed elsewhere. See Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976); Alvord v. State, 322 So.2d 533 (Fla. 1975), cert. denied, 428 U.S. 923, 96 S.Ct. 3234, 49 L.Ed.2d 1226 (1976); State v. Dixon, 283 So.2d 1 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974).
The conviction and sentence are affirmed.
It is so ordered.
SUNDBERG, C.J., and ADKINS, BOYD and ALDERMAN, JJ., concur.
McDONALD, J., concurs in part and dissents in part with an opinion, in which OVERTON, J., concurs.
McDONALD, Justice, concurring in part and dissenting in part.
I would affirm the conviction in this cause but would reduce the sentence to life imprisonment or at least grant Hitchcock a new sentencing hearing.
I am not satisfied that Hitchcock received the benefit of all mitigating circumstances available to him. A person can know right from wrong and therefore be responsible for his actions but at the same time have impaired judgment and inability to conform his behavior to the requirements of law. This latter situation presents mitigating circumstances as to his sentencing. § 921.141(6)(f), Fla. Stat. (1975).
In this case there was testimony that from childhood Hitchcock's mind had not been entirely normal. Prior to the commission of this crime Hitchcock had been drinking heavily and smoking marijuana. Returning from his "night on the town," he entered the bedroom of the thirteen-year-old victim and engaged in sex with her. When she announced that she had been hurt and was going to tell her mother he reacted impulsively. From the record I can discern no basis for the jury or the trial judge's failure to find that the defendant committed this crime while under the influence of extreme mental or emotional disturbance or that his capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired. Certainly his actions fall far short of showing a reasoned planning or reasoned knowledge of what he was doing when he strangled the victim.
I further do not feel that finding the aggravating factor of especially heinous, atrocious, or cruel was proper. This crime was not accompanied by such additional acts as to set the crime apart from the norm. It did not show a conscienceless or pitiless crime which is unnecessarily torturous to the victim. The test of cruel and heinous simply is not met in this case. See Cooper v. State, 336 So.2d 1133 (Fla. 1976), cert. denied, 431 U.S. 925, 97 S.Ct. 2200, 53 L.Ed.2d 239 (1977); State v. Dixon, 283 So.2d 1 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974). See also Godfrey v. Georgia, 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980).
*749 I therefore conclude that the sentence of death should be vacated and a life sentence imposed. At the very least the cause should be remanded for a complete, new sentencing hearing.
OVERTON, J., concurs.
NOTES
[1] Numerous questions were answered before the state had time to object and those answers were not stricken. In such instance, a defendant cannot complain because, even if sustaining the objection were error, the witness' answer cured any error. Childers v. State, 74 Fla. 288, 77 So. 99 (1917).
[2] We note that one female juror in this case had a child younger than 15 years and, thus, was eligible for exemption from jury service.
[3] We repeated this holding in Vasil v. State, 374 So.2d 465 (Fla. 1979).
[4] Defense counsel failed to object when the judge announced that he would reserve ruling on the felony-murder portion of the motion.
[5] Defense did not try to refute the medical testimony that the victim had engaged in intercourse. Hitchcock's only defense to the underlying felony, therefore, rested on the victim's consent.
[6] We note that the trial court would have been justified in finding an additional aggravating circumstance. At the time of the murder Hitchcock was on parole from Arkansas, and being on parole has been construed as being under sentence of imprisonment. Aldridge v. State, 351 So.2d 942 (Fla. 1977), cert. denied, 439 U.S. 882, 99 S.Ct. 220, 58 L.Ed.2d 194 (1978). See also Peek v. State, 395 So.2d 492 (Fla. 1980). The failure to consider this aggravating circumstance, however, does not impair the validity of the death sentence imposed here because both the jury and the judge found sufficient aggravating factors to outweigh any mitigating evidence.
[7] Ch. 74-121, Laws of Florida, amended ch. 794, Fla. Stat., to replace the former rape statute with the crime of sexual battery. See § 794.011, Fla. Stat. The word "rape" in § 921.141(5)(d) has not yet been changed to "sexual battery."