# Supreme Court of Florida

_____

No. SC17-445
_____

**JAMES ERNEST HITCHCOCK,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

[August 10, 2017]

PER CURIAM.

James Ernest Hitchcock is a prisoner under sentence of death whose sentence became final in 2000. See Hitchcock v. State, 755 So. 2d 638 (Fla.), cert. denied, 531 U.S. 1040 (2000). Following the United States Supreme Court's decision in Hurst v. Florida, 136 S. Ct. 616 (2016), and this Court's decision on remand in Hurst v. State, 202 So. 3d 40 (Fla. 2016), cert. denied, 137 S. Ct. 2161 (2017), Hitchcock filed a successive motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.851, arguing that these decisions render his death sentence unconstitutional under both the United States and Florida

Constitutions.[1]  The circuit court summarily denied Hitchcock's motion,

concluding that this Court's decision in Asay v. State, 210 So. 3d 1 (Fla. 2016),

petition for cert. filed, No. 16-9033 (U.S. Apr. 29, 2017), precludes relief.

Hitchcock appeals the circuit court's order,[2] and we have jurisdiction.  See art. V, §

3(b)(1), Fla. Const.  We affirm because we agree with the circuit court that our

decision in Asay forecloses relief.

We have consistently applied our decision in Asay, denying the retroactive

application of Hurst v. Florida as interpreted in Hurst v. State to defendants whose

_____

1.  Hitchcock relied on Hurst v. Florida and Hurst v. State to argue below that his death sentence is unconstitutional under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, the corresponding provisions of the Florida Constitution, and article I, sections 15 and 16, of the Florida Constitution.

2.  In this appeal, Hitchcock relies on Hurst v. Florida and Hurst v. State for the following arguments: (1) the Hurst error in his case was not harmless because his jury did not unanimously recommend death; (2) denying Hitchcock Hurst relief based on non-retroactivity violates the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and the corresponding provisions of the Florida Constitution; (3) Hitchcock was denied his right to a jury trial on the facts that led to his death sentence; (4) Hitchcock's death sentence violates the Eighth Amendment because it was contrary to evolving standards of decency and is arbitrary and capricious; (5) the fact-finding that subjected Hitchcock to death was not proven beyond a reasonable doubt; (6) Hitchcock's death sentence violates article I, sections 15(a) and 16(a), of the Florida Constitution because the State did not present the aggravating factors in his indictment, and the aggravating factors were not found by his grand jury, thereby denying him notice of the full nature and cause of the accusation against him; and (7) the denial of Hitchcock's prior postconviction claims must be reheard and determined under a constitutional framework.

death sentences were final when the Supreme Court decided <u>Ring v. Arizona</u>, 536 U.S. 584 (2002). <u>See, e.g.</u>, <u>Zack v. State</u>, 42 Fla. L. Weekly S656, 2017 WL 2590703 (Fla. June 15, 2017); <u>Marshall v. Jones</u>, 42 Fla. L. Weekly S533, 2017 WL 1739246 (Fla. May 4, 2017); <u>Lambrix v. State</u>, 217 So. 3d 977 (Fla. 2017); <u>Willacy v. Jones</u>, No. SC16-497, 2017 WL 1033679 (Fla. Mar. 17, 2017); <u>Bogle v. State</u>, 213 So. 3d 833 (Fla. 2017); <u>Gaskin v. State</u>, 218 So. 3d 399 (Fla. 2017). Hitchcock is among those defendants whose death sentences were final before <u>Ring</u>, and his arguments do not compel departing from our precedent.

Although Hitchcock references various constitutional provisions as a basis for arguments that <u>Hurst v. State</u> should entitle him to a new sentencing proceeding, these are nothing more than arguments that <u>Hurst v. State</u> should be applied retroactively to his sentence, which became final prior to <u>Ring</u>. As such, these arguments were rejected when we decided <u>Asay</u>. Accordingly, we affirm the circuit court's order summarily denying Hitchcock's successive postconviction motion pursuant to <u>Asay</u>.

It is so ordered.

LABARGA, C.J., and QUINCE, POLSTON, and LAWSON, JJ., concur.
LEWIS, J., concurs in result with an opinion.
CANADY, J., concurs in result.
PARIENTE, J., dissents with an opinion.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

LEWIS, J., concurring in result.

In my view, as it did in Asay v. State, 210 So. 3d 1 (Fla. 2016), petition for cert. filed, No. 16-9033 (U.S. Apr. 29, 2017), the majority opinion incorrectly limits the retroactive application of Hurst by barring relief to even those defendants who, prior to Ring, had properly asserted, presented, and preserved challenges to the lack of jury factfinding and unanimity in Florida's capital sentencing procedure at the trial level and on direct appeal, the underlying gravamen of this entire issue. Although the United States Supreme Court's decision in Apprendi[3] became final while Hitchcock's case was on direct appeal before this Court, Hitchcock did not raise a Sixth Amendment challenge to his death sentence for the first time until after our decision, in the form of a postconviction claim, after his death sentence became final. See Hitchcock v. State, 991 So. 2d 337, 344 n.6 (Fla. 2008). Therefore, I agree that he is not entitled to relief, and I concur in the result. However, I write separately to explain my disagreement with the Hurst retroactivity issue as adopted by this Court.

Many courts struggle with the "staggeringly intricate body of law governing the question whether new constitutional doctrines should be 'retroactively' or 'prospectively' applied." Witt v. State, 387 So. 2d 922, 925 (Fla. 1980) (quoting

_____

3. Apprendi v. New Jersey, 530 U.S. 466 (2000).

- 4 -

Paul M. Bator et al., Hart & Wechsler's The Federal Court & the Federal System 1477 (2d ed. 1973)). This Court need not tumble down the dizzying rabbit hole of untenable line drawing; instead, the Court could simply entertain Hurst claims for those defendants who properly presented and preserved the substance of the issue, even before Ring arrived. This is consistent with the precedent of this Court. In James v. State, 615 So. 2d 668, 669 (Fla. 1993), we granted relief to a defendant who had asserted at trial and on direct appeal that the jury instruction pertaining to the heinous, atrocious, or cruel aggravating circumstance was unconstitutionally vague before the United States Supreme Court ultimately reached that same conclusion in Espinosa v. Florida, 505 U.S. 1079 (1992). We concluded that— despite his case becoming final before the principle of law had a case name—it would be unjust to deprive James of the benefit of the Supreme Court's holding in Espinosa after he had properly presented and preserved such a claim. James, 615 So. 2d at 669. Similarly, I believe that defendants who properly preserved the substance of a Ring challenge at trial and on direct appeal prior to that decision should also be entitled to have their constitutional challenges heard.

Preservation of the issue is perhaps the most basic tenet of appellate review, see Steinhorst v. State, 412 So. 2d 332, 338 (Fla. 1982); and this Court should be particularly cognizant of preservation issues for capital defendants. Accordingly, the fact that some defendants specifically cited the name Ring while

others did not is not dispositive.  Rather, the proper inquiry centers on whether a defendant preserved his or her substantive constitutional claim to which and for which Hurst applies.[4]  This preservation approach—enshrined in James— ameliorates some of the majority's concern with the effect on the administration of justice.  Defendants, like Hitchcock, who did not properly preserve their constitutional challenges—through trial and direct appeal—forfeited them just as any other defendant who fails to raise and preserve a claim.  However, those defendants who challenged Florida's unconstitutional sentencing scheme based on the substantive matters addressed in Hurst are entitled to consideration of that constitutional challenge.

Jurists have echoed this type of approach as a remedy to the more exacting federal Teague[5] standard.[6]  Federal courts have employed a similar preservation approach, and it is "one of the dominant means by which federal courts limit the disruptive effects of legal change in the context of direct review of federal criminal

---

4.  See L. Anita Richardson & Leonard B. Mandell, Fairness Over Fortuity: Retroactivity Revisited and Revised, 1989 Utah L. Rev. 11, 56-57 (1989).

5.  Teague v. Lane, 489 U.S. 288 (1989).

6.  Tung Yin, A Better Mousetrap: Procedural Default as a Retroactivity Alternative to Teague v. Lane and the Antiterrorism and Effective Death Penalty Act of 1996, 25 Am. J. Crim. L. 203, 232 (1998).

convictions."[7] Regardless of the limited federal approach, scholars urge state courts to pull retroactivity off Teague's constitutional floor,[8] which the Supreme Court expressly permitted in Danforth v. Minnesota, 552 U.S. 264, 280 (2008).

This Court's adoption of the Stovall[9]/Linkletter[10] standard was intended to provide "more expansive retroactivity standards" than those of Teague. Johnson v. State, 904 So. 2d 400, 409 (Fla. 2005). However, the Court's retroactivity decision today eschews that intention. Further, it illuminates Justice Harlan's famous critique of Linkletter:

> Simply fishing one case from the stream of appellate review . . . and then permitting a stream of similar cases subsequently to flow by unaffected by that new rule constitute[s] an indefensible departure from this model of judicial review.

Williams v. United States, 401 U.S. 667, 679 (1971) (Harlan, J., concurring in part and dissenting in part). However, that is how the majority opinion draws its determinative, albeit arbitrary, line. As a result, Florida will treat similarly situated

---

7. Toby J. Heytens, Managing Transitional Moments in Criminal Cases, 115 Yale L.J. 922, 942 (2006).

8. Christopher N. Lasch, The Future of Teague Retroactivity, or "Redressability," After Danforth v. Minnesota: Why Lower Courts Should Give Retroactive Effect to New Constitutional Rules of Criminal Procedure in Postconviction Proceedings, 46 Am. Crim. L. Rev. 1, 51-54 (2009).

9. Stovall v. Denno, 388 U.S. 293, 297 (1967).

10. Linkletter v. Walker, 381 U.S. 618, 636 (1965).

defendants differently—here, the difference between life and death—for potentially the simple reason of one defendant's docket delay. Vindication of these constitutional rights cannot be reduced to either fatal or fortuitous accidents of timing.[11]

Every pre-Ring defendant has been found by a jury to have wrongfully murdered his or her victim. There may be defendants that properly preserved challenges to their unconstitutional sentences through trial and direct appeal, but this Court now limits the application of Hurst, which may result in the State wrongfully executing those defendants. It seems axiomatic that "two wrongs don't make a right"; yet, this Court essentially condones that outcome with its very limited interpretation of Hurst's retroactivity and application.

PARIENTE, J., dissenting.

Reliability is the linchpin of Eighth Amendment jurisprudence, and a death sentence imposed without a unanimous jury verdict for death is inherently unreliable. The statute under which Hitchcock was sentenced, which did not require unanimity in the jury's recommendation for death, was unconstitutional under the Sixth and Eighth Amendments. To deny Hitchcock relief when other similarly situated defendants have been granted relief amounts to a denial of due

_____

11. See generally, Christopher M. Smith, Schriro v. Summerlin: A Fatal Accident of Timing, 54 DePaul L. Rev. 1325 (2005).

process.  The Eighth Amendment and due process arguments presented here and not addressed by the majority in Asay, in addition to the Sixth Amendment right announced in Hurst v. Florida and Hurst, "create[] the rare situation in which finality yields to fundamental fairness in order to ensure that the constitutional rights of all capital defendants in Florida are upheld."  Asay v. State, 210 So. 3d 1, 35 (Fla. 2016) (Pariente, J., concurring in part, dissenting in part) (citing Witt v. State, 387 So. 2d 922, 925 (Fla. 1980)), petition for cert. filed, No. 16-9033 (U.S. Apr. 29, 2017).  Rather than analyze Hitchcock's constitutional arguments, the majority dismisses them without explaining why Asay, in fact, forecloses relief.

Hitchcock argues that he is entitled to retroactive application of the right to a unanimous jury recommendation for death announced in Hurst under the Eighth Amendment to the United States Constitution.  See Hurst v. State (Hurst), 202 So. 3d 40, 44 (Fla. 2016), cert. denied, 137 S. Ct. 2161 (May 22, 2017).  Hitchcock also contends that denying retroactive application of Hurst to him and other similarly situated defendants violates their constitutional right to due process. Contrary to the majority's assertion, these issues were not specifically addressed in this Court's opinion in Asay.  In Asay, this Court made multiple references to the "right to jury trial" as an "indispensable component of our justice system" and focused primarily on the rule announced in Ring, a Sixth Amendment case.  Asay, 210 So. 3d at 17 (citing Blair v. State, 698 So. 2d 1210, 1213 (Fla. 1997)).  This

Court did not in <u>Asay</u>, however, discuss the new right announced by this Court in <u>Hurst</u> to a unanimous recommendation for death under the Eighth Amendment. Indeed, although the right to a unanimous jury recommendation for death may exist under both the Sixth and Eighth Amendments to the United States Constitution, the retroactivity analysis, which is based on the purpose of the new rule and reliance on the old rule, is undoubtedly different in each context. Therefore, <u>Asay</u> does not foreclose relief in this case, as the majority opinion assumes without explanation. <u>See</u> majority op. at 2.

As I did in <u>Asay</u> and <u>Mosley v. State</u>, 209 So. 3d 1248 (Fla. 2016), I continue to agree that <u>Witt</u> provides the appropriate standard for determining the retroactivity of <u>Hurst</u>. However, as I explained in my concurring in part and dissenting in part opinion in <u>Asay</u>, any line drawing in the retroactive application of <u>Hurst</u> to capital defendants "results in an unintended arbitrariness as to who receives relief." <u>Asay</u>, 210 So. 3d at 36 (Pariente, J., concurring in part and dissenting in part).

For the same reasons I conclude that the right announced in <u>Hurst</u> under the right to jury trial (Sixth Amendment and article I, section 22, of the Florida Constitution) requires full retroactivity, I would conclude that the right to a unanimous jury recommendation of death announced in <u>Hurst</u> under the Eighth Amendment requires full retroactivity. As I stated in <u>Asay</u>, "To avoid . . .

- 10 -

arbitrariness and to ensure uniformity and fundamental fairness in Florida's capital sentencing, our opinion in Hurst should be applied retroactively to all death sentences. Id. (Pariente, J., concurring in part, dissenting in part) (emphasis added). In addition to the arbitrariness of the imposition of the death penalty as described by Justice Breyer, joined by Justice Ginsburg,[12] this Court imposes another layer of arbitrariness in determining which defendants will receive relief, based on the critical right to a jury trial and a unanimous jury recommendation. Justice Perry provided an example in his dissenting opinion in Asay:

> For example, Asay committed two murders on the night of July 17, 1987. His sentence became final on October 7, 1991, when the United States Supreme Court denied certiorari. See Asay v. Florida, 502 U.S. 895 (1991). Asay's nine-to-three jury recommendation that resulted in a death sentence would not be constitutional if Hurst v. Florida applied to him, but the majority holds that he is not entitled to the Sixth Amendment protections articulated in Hurst v. Florida. Yet, under the present majority's decision, another defendant who committed his offense on an earlier date but had his sentence vacated and was later resentenced after Ring, cannot receive the death penalty without the protections articulated in Hurst. Timothy Hurst committed his crimes on May 2, 1990, and was originally sentenced on April 26, 2000, which was final October 21, 2002, a few short months after the decision in Ring. The majority's application of Hurst v. Florida makes constitutional protection depend on little more than a roll of the dice.

210 So. 3d at 39-40 (Perry, J., dissenting) (footnotes omitted).

12. See Glossip v. Gross, 135 S. Ct. 2726, 2760-64 (2015) (Breyer, J., dissenting) (Justice Breyer, joined by Justice Ginsburg, explained that because of the inherent arbitrariness in the imposition of the death penalty it is unconstitutional under the Eighth Amendment.).

As to Justice Lewis's approach to Hurst retroactivity under James v. State, 615 So. 2d 668 (Fla. 1993),[13] I agree that this approach is preferable to denying relief altogether. Since Hurst, I have noted defendants who raised Sixth Amendment challenges against Florida's capital sentencing scheme even before the United States Supreme Court issued its decision in Ring. See, e.g., Gaskin v. State, 218 So. 3d 399, 402 (Fla. 2017) (Pariente, J., concurring in part and dissenting in part). Ultimately, as I stated in Asay, because "death is different," "we must be extraordinarily vigilant in ensuring that the death penalty is not arbitrarily imposed." Asay, 210 So. 3d at 32 (Pariente, J., concurring in part and dissenting in part).

Hitchcock, who was twenty years old at the time of his crime, has had four different sentencing proceedings. His sentence of death has been litigated since 1977. See Hitchcock v. State, 413 So. 2d 741, 743 (Fla.), cert. denied, 459 U.S. 960 (1982).[14] Two times, the United States Supreme Court granted penalty phase relief, remanding the case each time for further review. See Hitchcock v. Florida, 505 U.S. 1215 (1992); Hitchcock v. Dugger, 481 U.S. 393 (1987). After a third

13. See concurring in result op. at 4 (Lewis, J.); Asay, 210 So. 3d at 30-31 (Lewis, J., concurring in result).

14. The jury's vote to recommend a sentence of death in Hitchcock's first trial is unclear.

- 12 -

penalty phase, in which the jury unanimously recommended a sentence of death, this Court again reversed the sentence of death and remanded for a new penalty phase. Hitchcock v. State, 673 So. 2d 859, 860 (Fla. 1996). After Hitchcock's fourth penalty phase, which began twenty years after the crime, the jury recommended a sentence of death by a vote of 10-2, and the trial court again sentenced Hitchcock to death. Hitchcock v. State, 755 So. 2d 638, 640 (Fla.), cert. denied, 531 U.S. 1040 (2000). That sentence is at issue in this case.

At each proceeding, Hitchcock presented mitigating evidence, including that Hitchcock suffered "from extreme mental and emotional disturbance, that he was under extreme duress or the domination of another person, . . . that his capacity to appreciate the criminality of his conduct was substantially impaired," and that he was under the influence of alcohol and drugs at the time of the crime. Hitchcock, 413 So. 2d at 747.

As early as 1982, Justice McDonald, joined by Justice Overton, concluded that Hitchcock's death sentence was disproportionate and argued that Hitchcock's death sentence should have been reduced to life. Id. at 748-49 (McDonald, J., concurring in part and dissenting in part). Likewise, after Hitchcock's second penalty phase, Justice Kogan, joined by Justice Barkett, concluded "that the death

- 13 -

penalty is disproportionate" in Hitchcock's case. Hitchcock v. State, 578 So. 2d 685, 694 (Fla. 1990) (Kogan, J., dissenting).[15]

Hitchcock raised a timely Ring claim in his postconviction motion and in a separate petition for a writ of habeas corpus. Hitchcock v. State, 991 So. 2d 337, 344 n.6 (Fla. 2008); id. at 345 n.7. The postconviction court denied relief; this Court affirmed the postconviction court's denial of relief and denied Hitchcock's petition for a writ of habeas corpus. Id. at 362-63.

Hitchcock also raised a "corresponding ineffective assistance of counsel claim," which this Court denied. This Court stated that because "neither Ring nor Apprendi had been decided when the appeal of Hitchcock's latest resentencing was pending before this Court," Hitchcock's arguments were without merit, and "[c]ounsel cannot be expected to anticipate changes in the law." Id. at 363 (citing Walton v. State, 847 So. 2d 438, 445 (Fla. 2003)). Thus, while approaching retroactivity based solely on preservation, as Justice Lewis would contend is appropriate, is preferable to the majority's resolution of the issue—denying relief to all defendant's whose sentences became final before Ring—this resolution still results in the additional arbitrariness of defendants being granted a new penalty

---

15. Chief Justice Shaw also dissented in the affirmance of the death sentence for unstated reasons. Hitchcock, 578 So. 2d at 694 (Shaw, C.J., dissenting).

- 14 -

phase only if their lawyers had the foresight to raise an issue that was repeatedly determined to be meritless before <u>Ring</u>. For all these reasons, I would apply <u>Hurst</u> retroactively to Hitchcock's sentence of death.

In <u>Hurst</u>, this Court stated:

> If death is to be imposed, unanimous jury sentencing recommendations, when made in conjunction with the other critical findings unanimously found by the jury, provide the highest degree of reliability in meeting these constitutional requirements in the capital sentencing process.

202 So. 3d at 60. Based on the numerous resentencing procedures in Hitchcock's case, Hitchcock's sentence of death is anything but reliable. Also, the jury's most recent vote to recommend that Hitchcock be sentenced to death was 10-2. <u>Hitchcock</u>, 755 So. 2d at 640. The <u>Hurst</u> error in Hitchcock's case is clear. Additionally, because of the significant mitigating evidence Hitchcock has presented at each penalty phase, and because it is unclear why two jurors determined that death was not the appropriate punishment in this case, I would conclude that the <u>Hurst</u> error in Hitchcock's case is not harmless beyond a reasonable doubt. Therefore, I would vacate the sentence of death, and remand for a new penalty phase.

Accordingly, I dissent.

An Appeal from the Circuit Court in and for Orange County,
    Reginald K. Whitehead, Judge - Case No. 481976CF001942000AOX

James Vincent Viggiano, Jr., Capital Collateral Regional Counsel, and David Dixon Hendry, James L. Driscoll, Jr., and Gregory W. Brown, Assistant Capital Collateral Regional Counsel, Middle Region, Temple Terrace, Florida,

    for Appellant

Pamela Jo Bondi, Attorney General, Tallahassee, Florida; and Tayo Popoola, Assistant Attorney General, Daytona Beach, Florida,

    for Appellee