673 So.2d 859 (1996)
James Ernest HITCHCOCK, Appellant,
v.
STATE of Florida, Appellee.
No. 82350.
Supreme Court of Florida.
March 21, 1996.
Rehearing Denied May 15, 1996.
*860 Richard L. Jorandby, Public Defender; and Steven H. Malone and Gary Caldwell, Assistant Public Defenders, Fifteenth Judicial Circuit, West Palm Beach, for Appellant.
Robert A. Butterworth, Attorney General and Kenneth S. Nunnelley, Assistant Attorney General, Daytona Beach, for Appellee.
PER CURIAM.
James Ernest Hitchcock appeals the death sentence imposed upon him after a second remand for resentencing. We have jurisdiction pursuant to article V, section 3(b)(1) of the Florida Constitution. We again remand for resentencing because evidence portraying Hitchcock as a pedophile, including unverified allegations of Hitchcock's sexual abuse of a number of children, was erroneously made a feature of his resentencing proceeding. This evidence was prejudicial and deprived Hitchcock of a fair sentencing.
Hitchcock was convicted for the 1976 strangulation murder of his brother's thirteen-year-old stepdaughter. The facts surrounding the murder are set forth in Hitchcock v. State, 413 So.2d 741 (Fla.) (Hitchcock I), cert. denied, 459 U.S. 960, 103 S.Ct. 274, 74 L.Ed.2d 213 (1982). The jury recommended a sentence of death, and the trial judge followed that recommendation. This Court affirmed Hitchcock's conviction and sentence. Id. Thereafter, we affirmed the denial of Hitchcock's motion for postconviction relief. Hitchcock v. State, 432 So.2d 42 (Fla.1983) (Hitchcock II). In later habeas corpus proceedings in the federal courts, however, the United States Supreme Court granted certiorari and vacated Hitchcock's death sentence because the advisory jury was instructed not to consider and the sentencing judge refused to consider evidence of nonstatutory mitigating circumstances. Hitchcock v. Dugger, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987).
On remand, the jury again recommended the death penalty, which the trial judge subsequently imposed. This Court affirmed the sentence. Hitchcock v. State, 578 So.2d 685 (Fla.1990) (Hitchcock III), cert. denied, 502 U.S. 912, 112 S.Ct. 311, 116 L.Ed.2d 254 (1991). On rehearing, the United States Supreme Court granted certiorari and remanded to this Court for reconsideration in light of Espinosa v. Florida, 505 U.S. 1079, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992). Hitchcock v. Florida, 505 U.S. 1215, 112 S.Ct. 3020, 120 L.Ed.2d 892 (1992). We vacated Hitchcock's death sentence and directed the trial court to empanel a jury and conduct a new penalty proceeding within ninety days. Hitchcock v. State, 614 So.2d 483 (Fla.1993) (Hitchcock IV).
In this third sentencing proceeding, now before us for review, the jury unanimously recommended the death penalty, which the trial judge then imposed. On appeal, Hitchcock raises eleven issues.[1] Because we again remand for resentencing, we address only four of those issues.
We find that the first issue raised by Hitchcock is dispositive in this case. Hitchcock claims that the State made a feature of *861 this resentencing evidence, which depicted him as a pedophile. In particular, Hitchcock challenges the State's redirect examination of the victim's sister regarding the sexual abuse Hitchcock allegedly inflicted upon her, the State's cross-examination of a defense expert regarding Hitchcock's sexual history, and the testimony of the State's expert who recounted the statements of children Hitchcock allegedly sexually abused and classified Hitchcock as a pedophile. This evidence, Hitchcock claims, diverted the jury's focus from its role of weighing statutory aggravators against statutory and nonstatutory mitigators and thereby resulted in an unreliable jury recommendation.
We have held that, to be admissible in the penalty phase, the State's direct evidence must relate to any of the aggravating circumstances. Floyd v. State, 569 So.2d 1225 (Fla.1990), cert. denied, 501 U.S. 1259, 111 S.Ct. 2912, 115 L.Ed.2d 1075 (1991). Evidence necessary to familiarize the jury with the underlying facts of the case may also be introduced during the penalty phase. Teffeteller v. State, 495 So.2d 744 (Fla.1986). Additionally, the State may introduce victim-impact evidence pursuant to section 921.142(8), Florida Statutes (1993). See Windom v. State, 656 So.2d 432 (Fla.1995), cert. denied, ___ U.S. ___, 116 S.Ct. 571, 133 L.Ed.2d 495 (1995). The State, however, does not claim that any of the evidence Hitchcock challenges was relevant to an aggravating circumstance[2] or other issue about which the State may present direct evidence.
Instead, the State argues the testimony of the victim's sister during redirect examination was admissible because defense counsel opened the door to it during cross-examination. During direct examination, the victim's sister testified that Hitchcock had been sexually abusing her sister prior to her murder. She also testified that Hitchcock had threatened to kill both girls if they told their mother about Hitchcock's abuse of the victim. During cross-examination of the victim's sister, defense counsel pointed out that she did not tell anyone about these events until seventeen years after her sister's murder. On redirect, the State asked the victim's sister if Hitchcock had ever sexually abused her. Defense counsel objected on the ground that such evidence amounted to nonstatutory aggravation. The State responded that the testimony of the victim's sister demonstrated that she feared Hitchcock and thus explained why she did not come forward with this information for seventeen years. The court overruled the defense's objection.
We do not agree that the testimony of the victim's sister about Hitchcock's alleged attacks upon her was responsive to the testimony elicited from her during cross-examination. Hitchcock's alleged sexual abuse of the victim's sister was not addressed during her cross-examination. Nor did the testimony of the victim's sister on redirect explain why she did not come forward with information about Hitchcock's prior attacks on the victim. Hitchcock was in prison during the seventeen-year period between his arrest and this most recent resentencing and consequently was not a threat to the victim's sister during that period. Because the redirect examination did not explain, correct, or modify the testimony on cross-examination, we conclude that it went beyond the scope of cross-examination.
The redirect examination, in reality, became a guise for the introduction of testimony about unverified collateral crimes. In an analogous context, we have held that the State is not permitted to present evidence of a defendant's criminal history, which constitutes inadmissible nonstatutory aggravation, under the pretense that it is being admitted for some other purpose. See Geralds v. State, 601 So.2d 1157 (Fla.1992). In Geralds, we noted:
This rule is of particular force and effect during the penalty phase of a capital murder trial where the jury is determining *862 whether to recommend the death penalty for the criminal accused. Improperly receiving vague and unverified information regarding a defendant's prior felonies clearly has the effect of unfairly prejudicing the defendant in the eyes of the jury and creates the risk that the jury will give undue weight to such information in recommending the penalty of death.
Id. at 1163. Similarly, we find here that the testimony by the victim's sister about Hitchcock's alleged attacks on her, which the State did not contend was relevant on direct, was not admissible when presented during redirect examination. The trial court thus erred in admitting testimony of the victim's sister recounting the sexual abuse Hitchcock allegedly inflicted upon her on the basis that Hitchcock opened the door to such testimony. Moreover, we find that the introduction of this evidence was not harmless because it was made a feature of the trial through the cross-examination of a defense expert and the direct examination of the State's expert. See Turtle v. State, 600 So.2d 1214 (Fla. 1st DCA 1992).
The State proceeded to make the testimony admitted during redirect examination of the victim's sister a feature of the resentencing by questioning two expert witnesses about pedophilia. This subject was not a proper issue in the resentencing. Dr. Elizabeth McMahon, a defense expert in the field of psychology, testified on direct examination regarding various observations she made during each of three interviews with Hitchcock and presented her opinions as to how he had matured during the ten-year span over which the interviews took place. Dr. McMahon's testimony was specifically limited to her opinions concerning Hitchcock's maturity while in prison. On cross-examination, however, the State asked numerous questions about Hitchcock's sexual history, including whether he had any tendencies toward pedophilia. When Dr. McMahon was asked about pedophilia, she stated "[t]here is certainly no case of that." The prosecutor, however, continued to pursue questions about pedophilia, including whether Dr. McMahon would have examined Hitchcock for pedophilia had she known that he had forcibly molested other children in addition to the victim.[3] The State's questions were clearly outside the scope of Dr. McMahon's direct examination. As a result of these questions, pedophilia became a feature of the resentencing.
The testimony of the victim's sister on redirect was again emphasized during the direct examination of Dr. Steven Jordan. Dr. Jordan interviewed the victim's sister prior to the resentencing proceeding. At trial, he repeated and elaborated on the testimony she provided during her redirect examination. He also presented testimony that had been related to him in interviews of other persons allegedly abused as children by Hitchcock.[4] Relying on these interviews, including his interview with the victim's sister, Dr. Jordan built upon the questions asked during the cross-examination of Dr. McMahon and expressly characterized Hitchcock as a pedophile.
The State argues that the questions asked of Dr. McMahon during cross-examination were a proper means of impeachment. Further, the State argues that Dr. Jordan's testimony was relevant to rebut the testimony of Dr. McMahon and to rebut the testimony of another defense expert, who expressed an opinion that Hitchcock would not be a danger to society in the future. We emphasize that this situation is similar to the one before the district court in Turtle v. State, 600 So.2d 1214 (Fla. 1st DCA 1992). In sum, the evidence introduced by the victim's sister on redirect examination and reiterated during the testimony of Dr. Jordan, the questions asked Dr. McMahon during cross-examination about pedophilia, the testimony of Dr. *863 Jordan as to the unverified allegations of third persons claiming they were abused by Hitchcock, and Dr. Jordan's characterization of Hitchcock as a pedophile made Hitchcock's alleged and unverified abuse of children other than the victim a focal point of the trial. We conclude that the prejudicial effect of this evidence, in total, outweighs any relevance the State alleges a particular individual's testimony might have had. See § 90.403, Fla. Stat. (1993). Thus, we conclude that Hitchcock was denied a fair and constitutional sentencing proceeding.
We direct that, upon remand, none of the testimony about alleged sexual attacks upon persons other than the victim be the subject of the State's questions or evidence. Additionally, we direct the State to avoid questions in the resentencing that elicit testimony about pedophilia. See Flanagan v. State, 625 So.2d 827 (Fla.1993).
Although our remand makes it unnecessary to address the other issues Hitchcock raises, we will address three of them in order to provide guidance in the next resentencing. Hitchcock claims that he was prejudiced by the State's argument that if given a life sentence, he would be eligible for parole after twenty-five years. We agree, based on the peculiar facts in this case, that the State's argument was improper. Because the resentencing occurred so close to the expiration of the twenty-five-year sentence, the State's argument unfairly prejudiced Hitchcock. Upon remand, the State is directed not to make a similar argument.
Hitchcock next claims that the trial court erred in giving to the jury an instruction indicating that he had previously been sentenced and that the sentence had been overturned. The court stated:
First of all, this case is back before you for consideration because a jury previously recommended that James Ernest Hitchcock be sentenced to death for this crime. However, the death sentence was overturned because of an incomplete jury instruction rendered to the previous jury.
The court subsequently made several additional attempts to clarify the instruction, each time stating that Hitchcock had been found guilty of murder and that this resentencing was necessary because an appellate court determined an error occurred in the prior sentencing proceeding.
When resentencing a defendant who has previously been sentenced to death, caution should be used in mentioning the defendant's prior sentence. Making the present jury aware that a prior jury recommended death and reemphasizing this fact as the trial judge did here could have the effect of preconditioning the present jury to a death recommendation. To avoid this potential problem on remand, we find that the jury is to be given the following instruction as to why it is considering Hitchcock's sentence:
An appellate court has reviewed and affirmed the defendant's conviction for the murder of Cynthia Driggers. However, the appellate court sent the case back to this court with instructions that the defendant is to have a new trial at this time to decide what sentence should be imposed.
No other instruction is to be given by the court as to a prior jury's penalty-phase verdict or why the case is before the jury for resentencing at this time.
Finally, we reject Hitchcock's argument that the length of time which his case has taken has made his sentencing for this murder, which occurred in 1978, a violation of his constitutional rights. See Hitchcock III, 578 So.2d at 693. We do, however, direct that the continued proceedings in this case be expedited. The trial court is directed to empanel a jury and conduct a new penalty proceeding within ninety days of the date this opinion becomes final.
It is so ordered.
GRIMES, C.J., and OVERTON, SHAW, KOGAN, HARDING, WELLS and ANSTEAD, JJ., concur.
NOTES
[1] Hitchcock claims: (1) the State introduced inadmissible evidence regarding his alleged sexual abuse of adolescents and his alleged pedophilia; (2) the seventeen-year delay between his convictions and current sentencing proceeding violates speedy trial, due process, and cruel and unusual punishment provisions of the United States and Florida Constitutions; (3) the trial court prevented him from presenting mitigating evidence; (4) the trial court erred in refusing to give his requested jury instructions; (5) the State engaged in improper argument; (6) the trial court erred in instructing the jury that his time served would be credited toward his twenty-five year life sentence; (7) the felony-murder aggravator is unconstitutional on its face and as applied; (8) the trial court improperly found all four aggravators; (9) the trial court erred in informing the jury that his prior death sentence had been overturned based on an incomplete instruction; (10) the trial court erroneously denied a motion for mistrial based on an improper show of solidarity between a witness and trial observers; and (11) the death sentence is not proportionate in this case.
[2] The jury was instructed on and the trial judge found the following aggravating factors: (1) the capital felony was committed while defendant was under a sentence of imprisonment; (2) the capital felony was committed while the defendant was engaged in the commission of a sexual battery; (3) the capital felony was committed for the purpose of avoiding a lawful arrest; and (4) the capital felony was especially heinous, atrocious, or cruel. § 921.141(5)(a), (d), (e), (h), Fla.Stat. (1993).
[3] The only evidence in the trial up to this point that Hitchcock molested children other than the victim was the testimony of the victim's sister on redirect examination. Later, the State's expert recounted to the court the information he obtained during his unverified interviews with persons who claimed Hitchcock molested them when they were children.
[4] Other than the victim's sister, only one person who notified Dr. Jordan of abuse allegedly sustained from Hitchcock testified at trial. This person's testimony was brief and barely touched on the issue of abuse.