755 So.2d 638 (2000)
James Ernest HITCHCOCK, Appellant,
v.
STATE of Florida, Appellee.
No. SC92717.
Supreme Court of Florida.
March 23, 2000.
Rehearing Denied May 3, 2000.
*640 Richard L. Jorandby, Public Defender, and Gary Caldwell and Richard B. Greene, Assistant Public Defenders, Fifteenth Judicial Circuit, West Palm Beach, Florida, for Appellant.
Robert A. Butterworth, Attorney General, and Kenneth S. Nunnelley, Assistant Attorney General, Daytona Beach, Florida, for Appellee.
PER CURIAM.
James Ernest Hitchcock appeals the death sentence imposed upon him after a third remand for resentencing. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm for the reasons stated herein.
Hitchcock was convicted and sentenced to death for the 1976 strangulation murder of his brother's thirteen-year-old step-daughter. The facts in this case are set forth in detail in Hitchcock v. State, 413 So.2d 741 (Fla.) (Hitchcock I), cert. denied, 459 U.S. 960, 103 S.Ct. 274, 74 L.Ed.2d 213 (1982). This Court affirmed Hitchcock's conviction and sentence. Id. Thereafter, this Court affirmed the denial of Hitchcock's motion for postconviction relief. Hitchcock v. State, 432 So.2d 42 (Fla.1983) (Hitchcock II). In later federal habeas corpus proceedings, the United States Supreme Court granted certiorari and vacated Hitchcock's death sentence because the advisory jury was instructed not to consider and the sentencing judge refused to consider evidence of nonstatutory mitigating circumstances. Hitchcock v. Dugger, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987). On remand, the jury again recommended the death penalty, which the trial judge subsequently imposed. This Court affirmed the sentence. Hitchcock v. State, 578 So.2d 685 (Fla. 1990) (Hitchcock III), cert. denied, 502 U.S. 912, 112 S.Ct. 311, 116 L.Ed.2d 254 (1991). On rehearing, the United States Supreme Court granted certiorari and remanded to this Court for reconsideration in light of Espinosa v. Florida, 505 U.S. 1079, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992). See Hitchcock v. Florida, 505 U.S. 1215, 112 S.Ct. 3020, 120 L.Ed.2d 892 (1992). We vacated Hitchcock's death sentence and directed the trial court to empanel a jury and conduct a new penalty proceeding within ninety days. Hitchcock v. State, 614 So.2d 483 (Fla.1993) (Hitchcock IV). In Hitchcock's second resentencing proceeding, the jury again recommended the death penalty, which the trial judge subsequently imposed. We again remanded for resentencing because evidence portraying Hitchcock as a pedophile was erroneously made a feature of his resentencing proceeding. Hitchcock v. State, 673 So.2d 859 (Fla.1996) (Hitchcock V).
Hitchcock's third resentencing proceeding began on September 9, 1996, and concluded with the jury's recommendation of the death penalty by a 10-2 vote. The court sentenced Hitchcock to death, finding the following aggravating circumstances: (1) the crime was committed by a person under sentence of imprisonment (parole); (2) the crime was committed during commission of the felony of sexual battery; (3) the crime was committed for the purpose of avoiding arrest; and (4) the crime was especially heinous, atrocious, or cruel (HAC). The court found one statutory mitigating factor, Hitchcock's age (twenty). As to nonstatutory mitigation, the court in an amended sentencing order assigned "very little weight" to six circumstances surrounding the instant crime, "some weight" to nine circumstances concerning Hitchcock's background, and "some weight" to eight circumstances concerning Hitchcock's "positive character *641 traits." Hitchcock appeals his third resentencing in this Court, asserting eighteen claims.[1] We find all of Hitchcock's claims to be procedurally barred or without merit for the reasons expressed herein.
In his first claim, Hitchcock argues that the trial court erred in permitting the State to put into evidence a three-page narrative report concerning results of a psychological test known as the Minnesota Multiphasic Personality Inventory (MMPI) administered to Hitchcock by expert witness Dr. Jethro Toomer, a forensic psychologist. The defense called Toomer as part of Hitchcock's case. On cross-examination by the State, Toomer identified the test as having been administered by Toomer as part of his psychological evaluation of Hitchcock. The test was scored at the University of Minnesota, and that scoring was forwarded to Toomer as a "Clinical Interpretive Report" and became a part of Toomer's records concerning his evaluation of Hitchcock's mental health. On cross-examination, the State offered the MMPI report in its rebuttal case after the defense rested. Hitchcock contends that the court should not have allowed the State to introduce the report separately as its own exhibit after Toomer had testified and was excused from the witness stand. Hitchcock argues that the State turned his mitigation evidence into evidence and argument supporting a death sentence and that admission of the report affected his sentence. He also claims that the trial court erred in allowing the prosecutor to discuss the report in closing argument.
We find no merit in Hitchcock's argument. The report was identified by Toomer as having been administered by him as part of his evaluation and as being a part of his records. There was no objection to the report on the basis of a lack of trustworthiness. The report was thus admissible as a relevant business record pursuant to section 90.803(6)(b), Florida Statutes. See Love v. Garcia, 634 So.2d 158 (Fla.1994); Baber v. State, 738 So.2d 379, 382 (Fla. 4th DCA), review granted, No. 96,010, 749 So.2d 502 (Fla. Dec. 21, 1999). The report was relevant in that Hitchcock's mental state was the mitigation issue about which Toomer was called to testify. The fact that the State did not question Toomer further about the report *642 did not render the report inadmissible. Hitchcock's claim that the report should not have been admitted as part of the State's rebuttal case is incorrect. After the report was identified, the State necessarily had to wait to introduce the report as a State exhibit until Hitchcock rested his case. Moreover, once the MMPI report was in evidence, the State could properly comment upon the report in its closing argument. See Davis v. State, 698 So.2d 1182, 1189 (Fla.1997); Craig v. State, 510 So.2d 857, 865 (Fla.1987). Finally, even if the admission of the MMPI report had been error because it was admitted in the State's rebuttal case, any such error would be harmless beyond a reasonable doubt. State v. DiGuilio, 491 So.2d 1129 (Fla.1986).
In his second claim, Hitchcock argues that the trial court erred allowing the prosecutor to argue in closing as follows:
[MR. ASHTON:] This isn't a crime where someone was trying to gain money or trying to get back at society for its evil. This is a rape of a little girl. She didn't do anything to him. She didn't cause his poverty. This wasn't him striking back. His poverty and his living circumstance are not mitigating in this case, at all, because they don't give us any understanding of why he did what he did. They don't reveal anything about his character.
MS. CASHMAN: Objection. Misstating what the law is as to mitigation.
MR. ASHTON: It's my argument.
THE COURT: I'm going to overrule the objection.
MR. ASHTON: The defendant lived through his father's death, and that was a very traumatic experience for his entire family, and you should feel some sympathy for a seven year old who had to watch his father die. Is it mitigating? Does it give you any [insight] into why he did what he did? It doesn't. It just doesn't tell us anything.
I submit to you sheer sympathy isn't mitigation. Mitigation is something that explains the crime or makes us understand the crime or makes the defendant less morally culpable for the crime in some way, not just something that makes us feel sorry for him. If this was about sympathy it would be a totally different process. But we see in the defendant's own family that people overcome. The human spirit can overcome virtually anything, and though the psychologist may not agree with this Pollyanna that I'm speaking, the defendant's mother and family, as example, as hard as it is, there are two ways to go. You work hard, you make a life or you become a criminal. The defendant made that choice. I submit that is not mitigating.
(Emphasis added.) Hitchcock contends that this argument misstated the law as to mitigation and adversely influenced the jury's recommendation as to his sentence.
We agree with Hitchcock to the extent that we find that the jury could have understood the prosecutor's statement that "[Hitchcock's] poverty and his living circumstance are not mitigating in this case, at all, because they don't give us any understanding of why he did what he did" to be a limiting statement as to the jury's consideration of the mitigating circumstance of Hitchcock's background. We caution prosecutors to adhere to the statement in the Standard Jury Instruction which explains that mitigating circumstances are:
8. Any of the following circumstances that would mitigate against the imposition of the death penalty:
a. Any [other] aspect of the defendant's character, record, or background
b. Any other circumstance of the offense.
This instruction is in accord with the following rule set forth in Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978):

*643 [T]he Eighth and Fourteenth Amendments require that the sentencer ... not be precluded from considering, as a mitigating factor, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence of less than death.
Id. at 604, 98 S.Ct. 2954. In this case, Hitchcock's "poverty and his living circumstance" were circumstances that the jury could consider in mitigation and give to those circumstances whatever weight the jury found to be proven by a preponderance of the evidence. Thus, it was erroneous for the prosecutor to say that these circumstances "are not mitigating in this case, at all." Therefore, we find that the trial court erred in overruling Hitchcock's objection as to this portion of the prosecutor's argument.
However, we find that the trial court's error in overruling Hitchcock's objection was harmless beyond a reasonable doubt. Any error in prosecutorial comments is harmless if there is no reasonable probability that those comments affected the verdict. King v. State, 623 So.2d 486, 487 (Fla.1993). The prosecutor's erroneous comment in this case was followed by a correct explanation that mitigation "makes the defendant less morally culpable for the crime in some way," which mirrors our explanation in Rogers v. State, 511 So.2d 526, 534 (Fla.1987). Moreover, Hitchcock presented thirteen witnesses who testified to the deprivation and abuse in his background, which the trial judge found to be established and to which the judge assigned "some weight" in his sentencing order. Thus, we conclude that there is no reasonable probability that the prosecutor's comments, considered in their totality, affected Hitchcock's sentence.
Hitchcock's claims three and four concern allegations about improper closing argument by the prosecutor. We have carefully reviewed the prosecutor's argument. Although some parts of the argument approach the edge of proper argument, we do not find that the prosecutor's argument in this case was improper. We again caution prosecutors that this Court expects them not to engage in improper argument. See Ruiz v. State, 743 So.2d 1, 9-10 (Fla. 1999).
In his fifth claim, Hitchcock claims that it was error for a substitute judge to rule on Hitchcock's motion for a new penalty phase. This claim relates to the appointment of Judge Conrad to dispose of Hitchcock's motion for correction of sentence pursuant to Florida Rule of Criminal Procedure 3.800, seeking an evidentiary hearing on alleged newly discovered evidence that Hitchcock's late brother had confessed to the instant murder before he died. After ordering and conducting an evidentiary hearing, Judge Conrad found no merit in Hitchcock's newly discovered evidence claim and denied his rule 3.800 motion. In pertinent part, Judge Conrad's order states:
9. In the defendant's Motion for Evidentiary Hearing on Newly Discovered Evidence, the defendant's counsel claims to have recently discovered that Richard Hitchcock confessed to Wandalene Green that he killed the victim in this case prior to Richard's death in 1994. The motion notes that the defendant has always contended that his brother Richard killed the victim and that the defendant so testified at his original trial and at his 1988 penalty phase. Finally, the motion states that "[t]his evidence is not proffered as lingering doubt about guilt; it shows actual innocence of the killing, as Mr. Hitchcock has always contended and has always sought to prove."
10. Since the alleged newly discovered evidence is related to the issue of the actual guilt or innocence of the defendant, this Court finds that after the scheduled rehearing it will be as qualified to rule on the validity of this claim as any other judge except the judge who presided over the case's original guilt phase. That judge is no longer sitting on the circuit court bench. Rehearing *644 the proceedings related to the defendant's claim will allow this Court to itself evaluate the testimony and evidence presented upon it. A new penalty proceeding is unnecessary to this Court's decision as to whether the alleged newly discovered evidence qualifies as newly discovered and whether it would probably produce an acquittal on retrial. Jones v. State, 591 So.2d 911 (Fla.1991).
We find no basis to conclude that Judge Conrad was not qualified to hear and rule on this motion. We also find no merit as to Hitchcock's claim that he was prejudiced by the original trial judge's removal from the case, as there is no showing of how any matters resulting from that removal prejudiced Hitchcock.
In claims six through nine, Hitchcock contends that the trial court erred in instructing upon and applying the four aggravating circumstances found in this case and in denying constitutional challenges to three of those aggravators. All of these claims are procedurally barred in that we have previously decided them adversely to Hitchcock.
In the appeal of Hitchcock's first resentencing, this Court considered and rejected Hitchcock's claims that the trial court erred in finding under sentence of imprisonment, avoiding arrest, felony murder, and HAC as aggravators. Hitchcock III, 578 So.2d at 692-93; see also Hitchcock I, 413 So.2d at 747. This Court has rejected Hitchcock's claim that sexual battery was improperly used as the underlying felony for the felony-murder aggravator. Id. In Hitchcock III, we affirmed the denial of constitutional challenges to HAC, 578 So.2d at 688 n. 2, and under sentence of imprisonment, 578 So.2d at 693, as aggravators. We reject Hitchcock's claim that the HAC instruction should have made clear that HAC applies only if the State has proven intent to cause extraordinary mental anguish or physical pain. See Guzman v. State, 721 So.2d 1155, 1160 (Fla.1998) ("The intention of the killer to inflict pain on the victim is not a necessary element of the aggravator."). We also have found the felony-murder aggravator to be constitutional. See Banks v. State, 700 So.2d 363, 367 (Fla.1997); Mills v. State, 476 So.2d 172, 178 (Fla.1985).
In his tenth and eleventh claims, Hitchcock contends that the trial court erred in refusing to give a jury instruction on improper doubling of aggravating factors and in improperly finding the felony-murder aggravator along with the avoid-arrest aggravator and the avoid-arrest aggravator along with the sentence-of-imprisonment aggravator. As to the jury instruction, Hitchcock argues that the jury should have been instructed:
The State may not rely upon a single aspect of the offense to establish more than a single aggravating circumstance. Therefore, if you find that two (2) or more of the aggravating circumstances are supported by a single aspect of the offense, you may only consider that as supporting a single aggravating circumstance.
In Castro v. State, 597 So.2d 259, 261 (Fla.1992), we explained that, when requested, an instruction on "doubled aggravators" may be given, if applicable. See also Jackson v. State, 648 So.2d 85, 91 (Fla.1994). However, we do not find that instruction applicable here. Our review of the record reveals that even though Hitchcock requested the doubling instruction, he did not inform the trial court of the aggravators that he alleged would constitute doubling.
In this Court in his eleventh claim, Hitchcock argues that such doubling of aggravators occurred in his resentencing because sexual battery was an essential feature of both the felony-murder and avoid-arrest aggravators and because Hitchcock's parole status was an essential feature of both the sentence-of-imprisonment and avoid-arrest aggravators. We conclude that the record does not support Hitchcock's claim and that the aggravators were separately appropriate. The record *645 demonstrates that the facts supporting the avoid-arrest aggravator focused on the motive of the crime, whereas the facts supporting the felony-murder aggravator focused on the underlying sexual battery, and the facts supporting under-sentence-of-imprisonment focused on Hitchcock's parole status. See, e.g., Wike v. State, 698 So.2d 817, 823 (Fla.1997). Thus, we find no error in denying the doubling instruction.
In his twelfth claim, Hitchcock claims that the trial court's findings as to mitigating circumstances in his sentencing order were deficient. The trial court's amended sentencing order lists specific nonstatutory mitigating circumstances in three groups, finds the circumstances to be established, and assigns weight to the circumstances. We find that the court has complied with directions for sentencing orders which we provided in Ferrell v. State, 653 So.2d 367 (Fla.1995), and Campbell v. State, 571 So.2d 415 (Fla.1990). Thus, we find no merit in this claim.
Hitchcock argues in his thirteenth claim that his death sentence is disproportionate. In Hitchcock III, this Court rejected a disproportionality claim for Hitchcock's then sentence of death, which was based on the same aggravating factors and similar mitigating circumstances as his current death sentence. 578 So.2d at 693. Here, Hitchcock relies upon two of the same cases that he relied upon in alleging disproportionality in Hitchcock III. See Holsworth v. State, 522 So.2d 348 (Fla. 1988); Songer v. State, 544 So.2d 1010, 1011 (Fla.1989). In Hitchcock III, this Court found Hitchcock's cases to be distinguishable because they were primarily jury override cases, cases dealing with domestic disputes, and cases with few valid aggravating circumstances and considerable mitigating evidence. Id. We find that additional cases cited by Hitchcock in this appeal are similarly distinguishable. We find that on the circumstances of this case and in comparison with other cases, Hitchcock's sentence of death is proportionate to his crime. See, e.g., Meyers v. State, 704 So.2d 1368 (Fla.1997); Cole v. State, 701 So.2d 845 (Fla.1997).
In his fourteenth claim, Hitchcock contends that the trial court erred in permitting testimony that Hitchcock's former attorney represented Hitchcock on a clemency petition. We find no merit in this claim because the complained-of comment was made by Hitchcock's own witness and because we have held that, although a vacated death sentence should not play a significant role in resentencing, "mention of a prior sentence does not mandate reversal." Hitchcock III, 578 So.2d at 692.
Hitchcock's fifteenth and sixteenth claims are related to claim five, in which he disputed the role of Judge Conrad, the successor judge who held an evidentiary hearing and denied Hitchcock's motion for resentencing. Here, Hitchcock claims that Judge Conrad erred in excluding corroborative evidence. As in the fifth claim, this evidence was related only to the guilt phase of Hitchcock's trial, which is not the subject of this appeal of his third resentencing. We reject these claims as being without merit.
Hitchcock's seventeenth claim, that the trial court erred in excluding from evidence and refusing to consider the State's prior offer of a life sentence, is procedurally barred in that this Court has considered a similar claim and found it to be meritless. See Hitchcock I, 413 So.2d at 746.
Likewise, Hitchcock's final claim, that the delay between his arrest and his resentencing violates his right to a speedy trial and his due-process rights and constitutes cruel and unusual punishment, is procedurally barred because this Court has considered and rejected this argument. See Hitchcock, 578 So.2d at 693; Hitchcock, *646 673 So.2d at 863; Knight v. State, 746 So.2d 423, 437 (Fla.1998). See also State v. Moore, 256 Neb. 553, 591 N.W.2d 86, 93-95 (1999).
Accordingly, we affirm Hitchcock's sentence of death.
It is so ordered.
HARDING, C.J., and SHAW, WELLS, PARIENTE, LEWIS and QUINCE, JJ., concur.
ANSTEAD, J., concurs in result only.
NOTES
[1] Hitchcock claims that: (1) the trial court erred in permitting the State to put into evidence a three-page narrative report concerning results of a psychological test; (2) the trial court erred in overruling the defense objection to the State's closing argument as to Hitchcock's mitigation evidence; (3) the trial court erred in overruling the defense objection to the State's argument as to a defense expert witness; (4) fundamental error occurred in the State's final argument to the jury; (5) resentencing is required because the judge in Hitchcock's new trial was removed from the bench during an investigation of bribery charges, and it was error for a substitute judge to rule on Hitchcock's motion for resentencing; (6) the trial court erred in instructing upon, allowing the State to argue, and finding the aggravating circumstance of avoiding or preventing arrest; (7) the trial court erred in denying Hitchcock's constitutional challenges to the sentence of imprisonment and felony-murder aggravating circumstances as applied; (8) the State failed to prove the felony-murder aggravating circumstance based on the underlying felony of rape or sexual battery, and this aggravating circumstance is unconstitutional; (9) the trial court erred in using the HAC aggravating circumstance and in giving an unconstitutional instruction as to HAC; (10) the trial court erred in refusing to instruct the jury as to improper doubling of aggravating circumstances; (11) the trial court erred in considering both the felony-murder and avoid-arrest aggravating circumstances; (12) the trial court's findings as to mitigation were deficient; (13) Hitchcock's death sentence is disproportionate; (14) the trial court erred in permitting testimony showing that his appellate attorney had represented Hitchcock on clemency; (15) the trial court erred in denying relief based on newly discovered evidence without considering corroborating evidence and circumstances; (16) the trial court (a substitute judge) erred in ruling on and denying Hitchcock's motion for a new sentencing proceeding; (17) the trial court erred in excluding from evidence and refusing to consider the State's prior offer of a life sentence; and (18) conducting Hitchcock's sentencing proceeding many years after his crime was unconstitutional.