PARIENTE, J.,
concurring in part and dissenting in part.
I agree with the majority’s reasoning as to all issues on appeal except for the trial judge’s answer to a question from the jury regarding sentencing options. I would reverse for a new penalty phase. In this case, by giving the jurors a brief answer that Armstrong would receive credit for time served, the trial court did not provide a complete and full answer to the jurors’ question, but in fact reinforced the jurors’ idea that Armstrong’s sentence for murder would be completed within a mere eight years.
*176 The crime in this case took place in 1990, and by 2007 when Armstrong received a new penalty phase, he had already served seventeen years in prison. The trial judge initially instructed the jury that they could either recommend death or life imprisonment without the possibility of parole for twenty-five years.[8] After deliberations began, the jury asked, “Will the 17 years he served be included in his sentence?” The judge answered that “the defendant will receive credit for the time served.”
It is apparent on the face of the jury’s inquiry that the jurors had a very logical question regarding the effect of a recommendation of life and wanted to know in advance how such a recommendation would work in this case, since the defendant had already served seventeen years of any sentence to be imposed. Obviously, the implication that the defendant would be eligible for parole in eight years would work against him significantly. Moreover, the question also reflects a potential misunderstanding that the jurors believed that if they voted for life, his sentence would be limited to only twenty-five years, as opposed to a life sentence without the possibility of parole for the first twenty-five years.
I conclude that by not answering the question to explain that the twenty-five years was not the defendant’s actual sentence, but rather the minimum length of a sentence of life, and that there was no guarantee of parole at or after twenty-five years, the court gave the jurors a confusing and incomplete answer, leading them to believe that he would be released in another eight years. Rather, under the circumstances of this case, where Armstrong would be merely eligible for parole in only eight years, the proper instruction would have been a variation of that given by the trial judge in Green v. State, 907 So.2d 489, 496 (Fla.2005):
The defendant, if sentenced to life without possibility for parole for 25 years, would be entitled to credit for all time jail served [sic] against a life sentence. However, there is no guarantee that the defendant would be granted parole at or after 25 years.
(Emphasis added.)
In my view, this case is similar to Hitchcock v. State, 673 So.2d 859, 868 (Fla.1996), in which this Court explicitly held that it was unfairly prejudicial to permit the State to argue that a defendant was eligible for parole after serving twenty-five years in a case where the defendant had already served seventeen out of the twenty-five years at the time of resentencing. Specifically, in that case, the defendant raised two related claims on appeal: (1) he was prejudiced by the State’s argument that if given a life sentence, he would be eligible for parole after serving twenty-five years; and (2) the trial court erred in instructing the jury that his time served would be credited toward his sentence. Id. at 868, 860 n. 1.
*177 As the Court had already determined that Hitchcock was entitled to resentenc-ing based on an unrelated claim, the Court did not need to address either of these arguments. Regardless, the Court reviewed the claim pertaining to the State’s argument in order to provide guidance during the next resentencing and explicitly directed the State to refrain from making such arguments again during the resen-tencing because the arguments “unfairly prejudiced” the defendant. Id. at 863. Although this Court did not address the claim regarding whether the trial court erred as to its instructions to the jury, the Court expressly held that the State improperly argued that Hitchcock would be eligible for parole after serving twenty-five years because “the resentencing occurred so close to the expiration of the twenty-five-year sentence.” Id. (emphasis added); see also Gore v. State, 706 So.2d 1328, 1333 (Fla.1997) (“In Hitchcock, the State argued in a resentencing proceeding that the defendant would be eligible for parole after twenty-five years if given a life sentence. We held this argument to be improper and unfairly prejudicial because the resentencing occurred so close in time to the expiration of the twenty-five-year period. In contrast, the State in the present case did not make any such argument, nor was Gore close to meeting the expiration of the twenty-five-year minimum mandatory”).
As in Hitchcock, here, Armstrong had served seventeen years and had only eight years remaining until he was “eligible” for parole. Moreover, both in Hitchcock and in this case, the jury was apprised that parole was only a possibility — not a guarantee. The majority summarily asserts that this ease does not contain the “peculiar facts” that were established in Hitchcock, but fails to discuss what peculiar facts differentiate Hitchcock from the instant case. Both cases involve a defendant who was a mere eight years away from being eligible for parole, and both cases involve the jury being apprised that parole was not a guarantee. However, in the decision now pending before the Court, the majority permits the trial court to inform the jury on the very issue that this Court previously held that the State may not argue during closing. In Hitchcock, this Court stated that even permitting the prosecutor to make the argument would be “unfairly prejudicial.”
In this case, while the court had discretion in determining whether to answer the question posed, if the court chose to answer the question, the defendant was entitled to a complete answer. The trial court’s incomplete response gave the impression that the defendant would be out in society in a mere eight years. This may have ultimately played a critical role in the jury’s decision not to recommend consecutive life sentences. Such an error cannot be considered harmless error beyond a reasonable doubt.
Another troubling aspect of this case is that the defendant was given consecutive life sentences, so in reality he could not possibly have been released from prison in any event after twenty-five years. Although in Gore, 706 So.2d at 1332-33, we stated that it was not error for the trial court to fail to discuss the other life sentences where there was no mandatory minimum sentence for any of the life sentences, it seems to me that when the date of a defendant’s possible release is critical to whether a jury recommends a life sentence, the jury should have the complete facts in order to make an informed decision.
The jury in a capital penalty-phase proceeding is in a unique position that does not occur in the context of any other jury matter. The jury is a cosentencer, and its *178 sentencing recommendation is entitled to “great weight.” See Snelgrove v. State, 921 So.2d 560, 571 (Fla.2005) (“[I]n Florida, the judge and jury are considered co-sentencers, and a recommendation of life must be accorded great weight by the sentencing judge.” (citation omitted)). However, unlike the trial judge, the jury has no working knowledge of the actual length of the sentence that a defendant is facing if it recommends the option of life without the possibility of parole for 25 years. Therefore, to the extent that its vote for life or death may hinge on concerns that the defendant may be released from prison, the jury should be informed of all relevant information that bears upon the ultimate length of the prison sentence. In this context, the jury is solely dependent upon the instructions from the trial court and the answers to questions regarding the actual sentence.
For the reasons addressed above, I dissent as to the sentence and would remand for resentencing. However, I would urge the Committee on Standard Jury Instructions in Criminal Cases to propose a standard instruction to address situations where a defendant has been serving a lengthy prison sentence and the jury in resentencing has a question as to the effect of the sentence on his eligibility for parole. The answer to the question, while now guided by the abuse of discretion standard, may literally be the difference between life and death; that is, a jury may be more inclined to recommend a life sentence if it is not under the misapprehension that the defendant would be released shortly.
LABARGA, J., concurs.

. Because the crime in this case occurred in 1990, once the jury returned a verdict of guilty, the sentencing options were death or life without the possibility of parole for twenty-five years. In 1994, the law changed to provide the jury with only two sentencing options: death or life without the possibility of parole. See § 775.082(1), Fla. Stat. (Supp.1994). This Court rejected the argument that the defendant should be able to agree to the harsher option, which would probably make a jury more likely to recommend a life sentence if they knew the defendant had no possibility of being released from prison. See Bates v. State, 750 So.2d 6, 10 (Fla.1999). I joined the dissent, which reasoned that a defendant should be able to waive his ex post facto rights since he is "the only person adversely affected by the waiver of the right.” Id. at 21 (Anstead, J., dissenting).