PARIENTE, J.,
dissenting.
Reliability is the linchpin of Eighth Amendment- jurisprudence, and a death sentence imposed without a unanimous jury verdict for death is inherently unreliable. The statute under which' Hitchcock was sentenced, which did not require unanimity in the jury’s recommendation for death, was unconstitutional under the Sixth and Eighth Amendments. To deny Hitchcock relief when other similarly situated defendants have been granted relief amounts to a denial of due process. The Eighth Amendment and due process arguments presented here and not addressed by the majority in Asay, in addition to the Sixth Amendment right announced in Hurst v. Florida and Hurst, “create! ] the rare situation in which, finality yields to fundamental fairness in order to. ensure that the constitutional rights of all capital defendants in Florida are upheld.” Asay v. State, 210 So.3d 1, 35 (Fla. 2016) (Pariente, J,, concurring in part, dissenting in part) (citing Witt v. State, 387 So.2d 922, 925 (Fla. 1980)), petition for cert. filed, No. 16-9033 (U.S. Apr. 29, 2017). Rather than analyze Hitchcock’s constitutional arguments, the majority dismisses them without explaining why Asay, in fact, forecloses relief.
Hitchcock argues that he is entitled to retroactive application of the right to a unanimous jury recommendation for death announced in Hurst under the Eighth Amendment to the United States Constitution. See Hurst v. State (Hurst), 202 So.3d 40, 44 (Fla. 2016), cert. denied. — U.S. -, 137 S.Ct. 2161, 198 L.Ed.2d 246 (2017). Hitchcock also contends that denying retroactive application of Hurst to him and other similarly situated defendants violates their constitutional right to due process. Contrary to the majority’s assertion, these issues were -not specifically addressed in this Court’s opinion in Asay. In Asay, this Court, made multiple references to the “right to jury trial” -as an “indispensable component of our justice system” and. focused primarily on the rule announced in Ring, a Sixth Amendment case, Asay, 210 So.3d at 17 (citing Blair v. State, 698 So.2d 1210, 1213 (Fla. 1997)). This Court did not in Asay, however, discuss the new right-announced by'this Court in Hurst to a unanimous recommendation for death under the' Eighth Amendment. Indeed, although the right to a unanimous jury recommendation for death may exist under both the Sixth and Eighth Amendments to the United States Constitution, the retroactivity analysis, which is based on the purpose of the new rule and reliance on the old rule, is undoubtedly different in each context. Therefore, Asay does not foreclose relief in this case, as the majority opinion assumes without explanation. See majority op. at 217.
As I, did in Asay and Mosley v. State, 209 So.3d 1248 (Fla. 2016), I continue to agree that Witt provides the appropriate standard for determining the retroactivity of Hurst. However,. as I explained in my concurring in part and dissenting in part opinion in Asay, any line drawing in the retroactive application of Hurst to capital defendants “results in an unintended arbitrariness as to who receives relief,” Asay, 210 So.3d at 36 (Pariente, J., concurring in part and dissenting in part).
For the same reasons I conclude that the right announced in Hurst under the right to jury trial (Sixth Amendment and article I, section 22, of the Florida Constitution) requires full retroactivity, I would conclude that the right to a unanimous jury recommendation of death announced in Hurst under the Eighth Amendment requires full retroactivity. As I stated in *221 Asay, “To avoid ... arbitrariness and to ensure uniformity and fundamental fairness in Florida’s capital sentencing, our opinion in Hurst should be applied retroactively to ah death sentences. Id. (Pariente, J., concurring in part, dissenting in part) (emphasis added). In addition to the arbitrariness of the imposition of the death penalty as described by Justice Breyer, joined by Justice Ginsburg,[12] this Court imposes another layer of arbitrariness in determining which defendants will receive relief, based on the critical right to a jury trial and a unanimous jury recommendation. Justice Perry provided an example in his dissenting opinion in Asay:
For example, Asay committed two murders on the night of July 17, 1987. His sentence became final on October 7, 1991, when the United States Supreme Court denied certiorari. See Asay v. Florida, 502 U.S. 895, 112 S.Ct. 265, 116 L.Ed.2d 218 (1991). Asay’s nine-to-three jury recommendation that resulted in a death sentence would not be constitu: tional if Hurst v. Florida applied to him, but the majority, holds that he is not entitled to the Sixth Amendment protections articulated in Hurst v. Florida. Yet, under the present majority’s decision, another defendant who committed his offense on an earlier date but had his sentence vacated and was later resen-tenced after Ring, cannot, receive the death penalty without the protections articulated in Hurst. Timothy Hurst committed his crimes on May 2, 1990, and was originally sentenced on April 26, 2000, which was final October 21, 2002, a few short months after the decision in Ring. The majority’s application of Hurst v. Florida makes constitutional protection depend on little more than a roll of the dice.
210 So.3d at 39-40 (Perry, J., dissenting) (footnotes omitted).
As to Justice Lewis’s approach to Hurst retroactivity under James v. State, 615 So.2d 668 (Fla. 1993),[13] I agree that this approach is preferable to denying relief altogether. Since Hurst, I, have noted defendants who raised Sixth Amendment challenges against Florida’s capital sentencing scheme even before the United States Supreme Court issued its decision in Ring. See, e.g., Gaskin v. State, 218 So.3d 399, 402 (Fla. 2017) (Pariente, J., concurring in part and dissenting in part). Ultimately, as I stated in Asay, because “death is different,” “we must be extraordinarily vigilant in ensuring that the death penalty is not arbitrarily imposed.” Asay, 210 So.3d at 32 (Pariente, J., concurring in part and dissenting in part).
Hitchcock, who was twenty years old at the time of his crime, has had four different sentencing proceedings. His sentence of death has been litigated- since 1977. See Hitchcock v. State, 413 So.2d 741, 743 (Fla.), cert. denied, 459 U.S. 960, 103 S.Ct. 274, 74 L.Ed.2d 213 (1982).[14] Two':times, the United States Supreme Court granted penalty phase relief, remanding the case each time for further review. See Hitchcock v. Florida, 505 U.S. 1215, 112 S.Ct. 3020, 120 L.Ed.2d 892 (1992); Hitchcock v. Dugger, 481 U.S. 393, 107 S.Ct. 1821, 95 L.Ed.2d 347 (1987). After a third penalty phase, in which the jury unanimously rec *222 ommended a sentence of death, this Court again reversed the sentence of death and remanded for a new penalty phase. Hitchcock v. State, 673 So.2d 859, 860 (Fla. 1996). After Hitchcock’s fourth penalty phase, which began twenty years after the crime, the jury recommended a sentence of death by a vote of 10-2, and the trial court again sentenced Hitchcock to death. Hitchcock v. State, 755 So.2d 638, 640 (Fla.), cert. denied, 531 U.S. 1040, 121 S.Ct. 633, 148 L.Ed.2d 541 (2000). That sentence is at issue in this case.
At each proceeding, Hitchcock presented mitigating evidence, including that Hitchcock suffered “from extreme mental and emotional disturbance, that he was under extreme duress or the domination of another person, ... that his capacity to appreciate the criminality of his conduct was substantially impaired,” and that he was under the influence of alcohol and drugs at the time of the crime. Hitchcock, 413 So.2d at 747.
As early as 1982, Justice McDonald, joined by Justice Overton, concluded that Hitchcock’s death sentence was disproportionate and argued that Hitchcock’s death sentence should have been reduced to life. Id. at 748-49 (McDonald, J., concurring in part and dissenting in part). Likewise, after Hitchcock’s second penalty phase, Justice Kogan, joined by Justice Barkett, concluded “that the death penalty is disproportionate” in Hitchcock’s case. Hitchcock v. State, 578 So.2d 685, 694 (Fla. 1990) (Kogan, J., dissenting).[15]
Hitchcock raised a timely Ring claim in his postconviction motion and in a separate petition for a writ of habeas corpus. Hitchcock v. State, 991 So.2d 337, 344 n.6 (Fla. 2008); id. at 345 n.7. The postconviction court denied relief; this Court affirmed the postconviction court’s denial of relief and denied Hitchcock’s petition for a writ of habeas corpus. Id. at 362-63.
Hitchcock also raised a “corresponding ineffective assistance of counsel claim,” which this Court denied. This Court stated that because “neither Ring nor Apprendi had been decided when the appeal of Hitchcock’s latest resentencing was pending before this Court,” Hitchcock’s arguments were without merit, and “[cjounsel cannot be expected to anticipate changes in the law.” Id. at 363 (citing Walton v. State, 847 So.2d 438, 445 (Fla. 2003)). Thus, while approaching retroactivity based solely on preservation, as Justice Lewis would contend is appropriate, is preferable to the majority’s resolution of the issue—denying relief to all defendant’s whose sentences became final before Ring—this resolution still results in the additional arbitrariness of defendants being granted a new penalty phase only if their lawyers had the foresight to raise an issue that was repeatedly determined to be meritless before Ring. For all these reasons, I would apply Hurst retroactively to Hitchcock’s sentence of death.
In Hurst, this Court stated:
If death is to be imposed, unanimous jury sentencing recommendations, when made in conjunction with the other critical findings unanimously found by the jury, provide the highest degree of reliability in meeting these constitutional requirements in the capital sentencing process.
202 So.3d at 60. Based on the numerous resentencing procedures in Hitchcock’s case, Hitchcock’s sentence of death is anything but reliable. Also, the jury’s most recent vote to recommend that Hitchcock be sentenced to death was 10-2. Hitchcock, *223 755 So.2d at 640. The Hurst- error in Hitchcock’s case is clear. Additionally, because of the significant mitigating evidence Hitchcock has presented at each penalty phase, and because it is unclear why two jurors determined that death was not the appropriate punishment in this case, I would conclude that the Hurst error in Hitchcock’s case is not harmless beyond a reasonable doubt. Therefore, I would vacate the sentence of death, and remand for a new penalty phase.
Accordingly, I dissent.

. See Glossip v. Gross, — U.S. -, 135 S.Ct. 2726, 2760-64, 192 L.Ed.2d 761 (2015) (Breyer, J., dissenting) (Justice Breyer, joined by Justice Ginsburg, explained that because of the inherent arbitrariness in the imposition of the death penalty it is unconstitutional under the Eighth Amendment.),

, See concurring in result op. at 218 (Lewis, J.); Asay, 210 So.3d at 30-31 (Lewis, J., concurring in result).

. The jury's vote to recommend a sentence of death in Hitchcock’s first trial is unclear.

. Chief Justice Shaw also dissented in the affirmance of the death sentence for unstated reasons. Hitchcock, 578 So.2d at 694 (Shaw, C.J., dissenting).