PARIENTE, J., dissenting.
This is Lowe's direct appeal from resentencing. I dissent because several errors in Lowe's resentencing cry out for this Court to grant Lowe a new penalty phase. Not only did the jury consider an improper aggravating factor of avoid arrest, as explained by Justice Lewis's separate opinion,[18] but the jury was also misled regarding certain key aspects that undoubtedly affected its considerations in recommending between life and death, as explained by Justice Quince's separate opinion.[19] Therefore, because the jury was presented with the improper avoid arrest aggravating factor, received misleading instructions as to its sentencing options, and was further misled as to Lowe receiving credit for time served, we cannot conclude that the Hurst[20] error in Lowe's resentencing was harmless beyond a reasonable doubt. See Davis v. State , 207 So.3d 142, 175 (Fla. 2016).
Hurst necessarily changed how this Court reviews the information that the jury considered in making its recommendation as to the appropriate sentence in each case. This Court has made clear that a proper understanding of Florida's parole system and defendants receiving credit for time served affects the jury's ability to understand its sentencing options.
*72 Hitchcock v. State , 673 So.2d 859, 863 (Fla. 1996). Former Justice Anstead and I have both expressed the importance of the trial court's role in fully informing the jury as to the reality of Florida's parole system. Justice Anstead explained in Green v. State , 907 So.2d 489 (Fla. 2005) :
[E]ven assuming [the trial court's] response [to the jury's inquiry] was technically accurate, the response was clearly flawed for what it did not tell the jurors . First, we should be clear that the response given certainly did not favor the defendant since it told the jury that with a life sentence the defendant would soon be eligible for parole, not in twenty-five years, but in ten, a very short time, indeed, if the jury is concerned, as jurors logically would be, with keeping a killer off the streets for a long time.
Id. at 505 (Anstead, J., concurring in part and dissenting in part) (emphasis added); see Armstrong v. State , 73 So.3d 155, 176 (Fla. 2011) (Pariente, J., concurring in part and dissenting in part). I echoed this sentiment in Armstrong , joined by Justice Labarga, stating:
[U]nlike the trial judge, the jury has no working knowledge of the actual length of the sentence that a defendant is facing if it recommends the option of life without the possibility of parole for 25 years. Therefore, to the extent that its vote for life or death may hinge on concerns that the defendant may be released from prison, the jury should be informed of all relevant information that bears upon the ultimate length of the prison sentence. In this context, the jury is solely dependent upon the instructions from the trial court and the answers to questions regarding the actual sentence.
73 So.3d at 178 (Pariente, J., concurring in part and dissenting in part) (emphasis added); see concurring in part and dissenting in part op. at 69-70 (Quince, J.).
In this case, the cumulative effect of the errors in Lowe's resentencing-the improper avoid arrest aggravating factor, misleading the jury as to the effect of its sentencing options, and references to Lowe's prior death sentence-require this Court to vacate Lowe's death sentence and remand for a new penalty phase pursuant to Hurst . As in Armstrong , the jury's inquiry in this case "regarding the effect of a recommendation of life" was a "very logical question," considering that Lowe had already served twenty "years of any sentence to be imposed." 73 So.3d at 176 (Pariente, J., concurring in part and dissenting in part); see Green , 907 So.2d at 505 (Anstead, J., concurring in part and dissenting in part). However, as a result of the incomplete information given in response to this inquiry, the jury-without understanding Florida's parole system or knowing that Lowe had an outstanding consecutive fifteen-year sentence for robbery-was misled to believe that Lowe could be released within five years of resentencing, if sentenced to life with the possibility of parole after twenty-five years instead of death. In fact, the trial court's answer in this case suggested that Lowe would be eligible for release in even less time than what was suggested in Hitchcock , Green , and Armstrong .
Further, the trial court did not allow Lowe to inform the jury of his consecutive fifteen-year sentence for robbery. Even if Lowe was granted parole within a few years of resentencing, he would still be required to serve an additional fifteen years in prison. Therefore, despite the prosecutor's and trial court's suggestions, it was impossible that Lowe would be released sooner than twenty years after resentencing.
*73 The majority concludes that Lowe has not established error, noting that "[n]either of the[ ] two prospective jurors" who asked questions prompting this explanation "was selected to sit on the actual jury." Majority op. at 55. However, regardless of whether the inquisitive prospective jurors were empaneled, the jury pool heard the information and could have understood the information to suggest that Lowe could be released soon after resentencing. This Court cannot speculate about the effect this incomplete information had on the jury. Once the jury was told that Lowe would receive credit for time served and was eligible for parole after twenty-five years, the defense should have been allowed to properly explain Florida's parole system and inform the jury of Lowe's consecutive fifteen-year sentence.
Exacerbating the error of misleading the jury as to its sentencing options, the jury heard multiple references to Lowe's prior death sentence throughout the resentencing. In one instance, Chaplain Resinella discussed during direct examination his time as the chaplain on death row and providing counsel to Lowe. In another instance, Warden McAndrew testified on direct examination:
DEFENSE: Now, you've heard that [Lowe] is housed on death row. He's by himself in a cell?
WARDEN: Yes he is.
See majority op. at 49. Dr. Riebsame also referenced Lowe's time on death row during his direct examination, stating:
RIEBSAME: Often times also more volumes, particularly in a case where there's, you know, a postconviction appeal and a person has been on death row for twenty years.
See id.
Finally, as Justice Quince explains, the prosecutor made four references to Lowe's prior death sentence during closing argument and argued that the jury should impose the same sentence imposed before. Concurring in part and dissenting in part op. at 69-70 (Quince, J.); see majority op. at 47-48, 48, 56. Contrary to the majority's assertions, the references to the prior death sentence in Teffeteller v. State , 495 So.2d 744 (Fla. 1986), which this Court determined did not warrant reversal, are distinguishable. See concurring in part and dissenting in part op. at 70-71 (Quince, J.). Even if Lowe's witnesses referenced Lowe's prior death sentence, the State's comments during closing argument compounded the error and went far beyond "merely mentioning the prior sentence of death." Teffeteller , 495 So.2d at 747.
Considering the cumulative effect of these errors in Lowe's resentencing in conjunction with the improper aggravating factor of avoid arrest, as explained by Justice Lewis, it is clear that Lowe's defense was prejudiced. The jury was left with the improper impression that Lowe could have been released from prison shortly after resentencing if sentenced to life instead of death. This impression could have easily "influenced the jury and preconditioned it to recommend a death sentence." Concurring in part and dissenting in part op. at 71 (Quince, J.). Thus, it is impossible for this Court to determine how the inappropriate information the jury received and the information the jury did not receive affected the jury's unanimous recommendation for death.
CONCLUSION
As this Court stated in Wood v. State , 209 So.3d 1217 (Fla. 2017), "Our inquiry post- Hurst must necessarily be the effect of any error on the jury's findings, rather *74 than whether beyond a reasonable doubt the trial judge would have still imposed death." Id. at 1233 (emphasis added). The errors in Lowe's resentencing could have easily tainted the jury's recommendation for death. Therefore, I would vacate Lowe's death sentence and remand for a new penalty phase.
Accordingly, I dissent.

Concurring in result and dissenting in part op. at 68-69 (Lewis, J.).

Concurring in part and dissenting in part op. at 69-71 (Quince, J.).

Hurst v. State (Hurst ), 202 So.3d 40 (Fla. 2016), cert. denied , --- U.S. ----, 137 S.Ct. 2161, 198 L.Ed.2d 246 (2017) ; see Hurst v. Florida , --- U.S. ----, 136 S.Ct. 616, 193 L.Ed.2d 504 (2016).